LIBERTY GLASS COMPANY, INC., a corporation, et al.,
Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE COMPANY, a corporation, et al.,
Defendants-Appellees.

No. 77–2290.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1979.

Rehearing Denied Dec. 28, 1979.

George R. Pain, Houston, Tex., Richard M. Calkins, Donald A. O'Brien, Chicago, Ill., for plaintiffs-appellants.

J. Clifford Gunter, III, Houston, Tex., for Allstate and National Emblem Ins. Co.

Philip J. John, Jr., Houston, Tex., for Buddy's Glass & Shatterproof Glass Corp.

Alan S. Gover, Houston, Tex., R. B. Cousins, Dallas, Tex., George E. Parker, III, Detroit, Mich., Craig Eggleston, Dallas, Tex., Alan H. Silberman, Chicago, Ill., for Members Mutual Ins.

Before TJOFLAT and RUBIN, Circuit Judges, and ALLGOOD,* District Judge.

TJOFLAT, Circuit Judge:

The appellants are firms engaged in the business of selling and installing motor vehicle glass in the Houston, Texas area. They brought this private antitrust action for treble damages and injunctive relief against a motor vehicle glass manufacturer, Shatterproof Glass Corporation (Shatterproof); its subsidiary glass installer, National Glass Company[1] (National Glass); and three automobile insurance companies, Allstate Insurance Company, its subsidiary, National Emblem Insurance Company, and Members Mutual Insurance Company (the insurers); alleging violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976), and of the Robinson-Patman Price Discrimination Act amendments to sections 2(a) and (f) of the Clayton Act, 15 U.S.C. § 13(a), (f) (1976). The plaintiff glass installers alleged that the insurers, Shatterproof, and National Glass combined, conspired and contracted to fix the prices to be paid for glass replacement in automobiles covered by the insurers; to effect a territorial allocation of the automobile glass replacement market; to discriminate in price among different purchasers of automobile replacement glass; and to eliminate competition by creating a boycott against the plaintiffs and monopolizing interstate trade and commerce.

Under the alleged arrangement, Shatterproof directed National Glass to contact the largest insurers in the Houston metropolitan area and negotiate prices, below the market and below National Glass's cost of doing business, for the sale of automobile glass to those claiming under the insurers' policies. Shatterproof and National Glass then agreed that National Glass would sell and install the automobile glass at discriminatorily low prices to claimants under the insurers' policies. To compensate Shatterproof and National Glass for cutting the price, the insurers would direct and coerce their claimants to do business with National Glass.

■ The insurers, later joined by Shatterproof and National Glass, moved for summary judgment at the conclusion of discovery. The district court held that the McCarran-Ferguson Act, 15 U.S.C. § 1012 (b) (1976),[2] which grants a qualified exemption from the Sherman Act to the "business of insurance," barred the plaintiff glass installers' Sherman Act claims. The court found that any agreement between the insurers and Shatterproof and National Glass related to satisfying claims under the insurance policies, and thus was within the business of insurance. Record, vol. V, at 1390. It further concluded that Texas, through its state antitrust and unfair competition and practices laws, sufficiently regulated the business of insurance to trigger the McCarran-Ferguson Act's "business of insurance" exemption. As for the plaintiffs' contention that the McCarran-Ferguson Act "boycott" provision[3] rendered the Act's business of insurance exemption inapplicable, the court found that a boycott had not been shown. In the court's view, a "boycott" occurs only "where the activity complained of involves insurance company 'blacklists' rather than refusals to deal," *id.* at 1391–92,

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. National Glass Company is the business name for appellee Buddy's Glass & Mirror Company, Inc.

2. 15 U.S.C. § 1012(b) provides in part:

    No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, . . . the Sherman Act, . . . the Clayton Act, and . . . the Federal Trade Commission Act, . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State Law.

3. 15 U.S.C. § 1013(b) provides:

    Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

and there was no indication of blacklisting in this case. The court, believing the McCarran-Ferguson Act exemption extends not only to insurers but also to those with whom an insurer contracts to discharge its policy obligations, granted summary judgment on the Sherman Act claims in favor of the insurers, Shatterproof, and National Glass. As for the Robinson-Patman Act claims, however, summary judgment was denied; no bar to suit was created by the McCarran-Ferguson Act, and genuine issues of material fact were presented. The district court entered a Fed.R.Civ.P. 54(b) judgment and the plaintiff glass installers took this appeal. A recent Supreme Court ruling, handed down while this appeal was pending, requires us to reverse the district court's disposition of the Sherman Act claims.

In *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Supreme Court, affirming this court, 556 F.2d 1375 (5th Cir. 1977), held that the business of insurance does not encompass agreements between insurers and third party providers of goods and services. In *Royal Drug*, Blue Shield of Texas offered to enter into agreements with pharmacies in order to hold down the cost of prescription drugs to its policyholders. The only issue before the Court was whether these agreements were within the business of insurance exemption of the McCarran-Ferguson Act; whether the agreements were illegal under the antitrust laws was not in question. In focusing on underwriting and spreading of risk as the critical elements of insurance, the Court held that:

> The Pharmacy Agreements thus do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield. By agreeing with pharmacies on the maximum prices it will pay for drugs, Blue Shield effectively reduces the total amount it must pay to its policyholders. The agreements thus enable Blue Shield to minimize costs and maximize profits. Such cost savings arrangements may well be sound business practice, and may well

inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the "business of insurance."

> The Pharmacy Agreements are thus legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low and thereby also keep low the level of premiums charged to their policyholders. Suppose, for example, that an insurance company entered into a contract with a large retail drug chain whereby its policyholders could obtain drugs under their policies only from stores operated by this chain. The justification for such an agreement would be administrative and bulk purchase savings resulting from obtaining all of the company's drug needs from a single dealer. Even though these cost savings might ultimately be reflected in lower premiums to policyholders, would such a contract be the "business of insurance?" Or suppose that the insurance company should decide to acquire the chain of drug stores in order to lower still further its costs of meeting its obligations to its policyholders. Such an acquisition would surely not be the "business of insurance."

> . . . . .

> If agreements between an insurer and retail pharmacists are the "business of insurance," because they reduce the insurer's costs, then so are all other agreements insurers may make to keep their costs under control—whether with automobile body repair shops or landlords. Such agreements would be exempt from the antitrust laws if Congress had extended the coverage of the McCarran-Ferguson Act to the "business of insurance companies." But that is precisely what Congress did not do.

440 U.S. at 214–15, 232–33, 99 S.Ct. at 1074–75, 1083–84 (footnotes omitted).

Here, as in *Royal Drug*, the arrangement between the insurers and the manufacturer and installer of automobile replacement glass cannot be said to fall within the busi-

ness of insurance. Thus, the district court's interpretation of the business of insurance exemption is in error. Having reached this holding, it is unnecessary for us to consider the correctness of the district court's application of the "boycott" exemption, since that exemption will no longer play a role in this case.[4]

■■ The appellees ask us to uphold the district court's dismissal of the Sherman Act claims on several grounds, all going to the sufficiency of the plaintiffs' case, that the district court did not consider. They cite *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), which states: "The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Id.* at 475 n. 6, 90 S.Ct. at 1156. While other circuit courts have expressly approved the practice of affirming the grant of summary judgment on grounds not considered by the trial court, *see, e. g., Reich v. Dow Badische Co.,* 575 F.2d 363, 369 n. 7 (2d Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Winter v. Local Union No. 639, International Brotherhood of Teamsters,* 186 U.S.App.D.C. 315, 320, 569 F.2d 146, 151 (1977); *United States v. General Motors Corp.,* 171 U.S.App.D.C. 27, 48, 518 F.2d 420, 441 (1975); *Maynard v. General Electric Co.,* 486 F.2d 538, 539–40 (4th Cir. 1973), the question appears to be one of first impression for this court. Although logic indicates that a court of appeals should have the power to affirm a summary judgment on grounds not relied upon by the trial court, whether the power should be exercised as a matter of course is open to question. For example, it would seem reasonable to us that a reviewing court should stay its hand where, as here, the trial court has not examined the merits of complicated factual issues.

In *Dandridge,* the Supreme Court, continuing its explication on the use of this broad power of review, said: "When attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question, it may be appropriate to remand the case rather than deal with the merits of that question in this Court." 397 U.S. at 475 n. 6, 90 S.Ct. at 1157. In the proceedings below, the court considered only the McCarran-Ferguson Act issues; it never assayed the legal sufficiency of the Sherman Act claims. Though we acknowledge that we have the power to search the record to determine whether the plaintiffs have shown enough to withstand the motions for summary judgment, we decline to do so in this highly complex case. We think the district court is a more convenient forum for this determination.

Accordingly, this case is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

---

4. In the proceeding below, the district court needed to consider the "boycott" exemption, since this could have made the Sherman Act applicable to the defendants' activities despite the business of insurance exemption of the McCarran-Ferguson Act. On remand, though, the challenged arrangement will not be exempt-

ed from the Sherman Act by the business of insurance exemption. We note in passing that the Supreme Court has construed the "boycott" exemption in *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978), more broadly than did the district court.