671 F.2d 432
 Fred E. NASSER, Sr., Nassery Nasser, Mona Nasser Hersheway,
Marie Nasser Weigand, and Jeanette Nasser Acton,
Plaintiffs-Appellants,
v.
The CITY OF HOMEWOOD, a municipal corporation, Robert G.
Waldrop, as Mayor of the City of Homewood, Leon Chambers, as
Chairman of the City Council of the City of Homewood,
Charles Sutton, Ralph Lurie, H. J. Wurtele, Margaret
Robertson, Pauline Montgomery, Edna McCune, William W. Cox,
Frank M. Dichiara, E. L. Harris, and Charlie Weidman, as
members of the City Council of the City of Homewood,
Defendants-Appellees.
 No. 80-7805.
 United States Court of Appeals,
Eleventh Circuit.
 March 22, 1982.
 
 Corretti & Newsom, Douglas Corretti, Donald H. Brockway, Jr., Birmingham, Ala., for plaintiffs-appellants.
 James W. Porter, II, Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.
 HENDERSON, Circuit Judge:
 
 
 1
 The plaintiffs are the owners of some 9.5 acres within the corporate limits of the city of Homewood, Alabama. They brought this action challenging the action of the defendants in rezoning of their property from multi-family residential to single-family residential, alleging violations of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), 42 U.S.C. §§ 3601-3619; the just compensation and due process clauses; and Alabama zoning statutes. The district court granted the defendants' motion for summary judgment, and the plaintiffs appeal that decision of the district court.
 
 
 2
 Prior to annexation into the city of Homewood in 1979, the plaintiffs' property had been zoned R-4 (multi-family residential) on the recommendation of the Jefferson County Planning Commission. By Act No. 79-255 (June 26, 1979), the Alabama legislature extended the boundaries of Homewood to include five parcels of land. The plaintiffs' property was located in Parcel V, and comprised roughly one-half of that tract's area. Parcel V was zoned R-2 (single-family residential) by the Homewood City Council, based on the recommendation of the Homewood Planning Commission, in Ordinance No. 1385 (Jan. 14, 1980).
 
 
 3
 The plaintiffs then filed this action for declaratory, injunctive and monetary relief, claiming that Ordinance No. 1385: (1) violated the Fair Housing Act; (2) constituted an unlawful taking without just compensation in violation of the Fifth and Fourteenth Amendments; (3) was arbitrary and capricious because it did not bear a substantial relationship to the health, safety and welfare of the public; (4) violated due process and (5) contravened state statutory notice requirements for zoning changes. The defendants moved to dismiss the complaint on several grounds, three of which are pertinent here: lack of standing under the Fair Housing Act, failure to state a claim of an unlawful taking and abstention. The district court converted this motion to dismiss to one for summary judgment pursuant to the provisions of Fed.R.Civ.P. 12(b), and the parties filed affidavits in support of their contentions.[1]THE UNDISPUTED FACTS
 
 
 4
 Although the parties differ as to the conclusions to be drawn, the evidence submitted on the defendants' motion is without controversy. In 1976 the plaintiffs entered into an agreement with a developer for the construction of a multi-family housing complex on the property.[2] The developer "looked into the possibility of having the said real property developed under some program supported by the Housing and Urban Development Department." Robert D. Barbour, an urban planner, stated in an affidavit that "(i)t was the intent of the owner of said property to develop a multi-family housing project on said property that would make some units available to low- and moderate-income families through rent subsidies."[3] Nasser conceded that "(t)he development did not materialize even though the developer spent some time in pursuing the project." There is no evidence that the 1976 plans progressed beyond the plaintiffs' agreement with the developer, and the developer's inquiry of the Department of Housing & Urban Development. In particular, there is no indication that the 1976 plans were viable in any way in 1979, or that the plaintiffs pursued, or even contemplated, any low or moderate income development other than the one in 1976.
 
 
 5
 Ralph J. Lurie, a member of both the planning commission and the city council, made a detailed affidavit concerning his contact as a member of those bodies with Nasser. He stated that "(a)t no time during his several appearances before Homewood authorities, however, did Mr. Nasser state or suggest that his purpose in seeking an R-4 classification was to build a multi-family project for the use and benefit of low income or minority groups." According to Lurie, at every point when the plaintiffs' plans were discussed Nasser or his attorney represented that they wished to build "an exclusive-high rent apartment complex of the type and sort which would only appeal to the upper income bracket." The plaintiffs neither impeached nor contradicted this evidence.
 
 
 6
 Neither was there any evidence that the 1976 project was in any way affected by or related to racial or other minority interests. Affidavits of the plaintiffs' witnesses contain the implicit assumption that "low and moderate-income housing" is synonymous with housing for minorities protected by the Fair Housing Act. The defendants do not attack this apparent deficiency in the plaintiffs' evidence. We would not lightly, if at all, indulge such an assumption. See Warth v. Seldin, 422 U.S. 490, 494-95 & n. 5, 502, 95 S.Ct. 2197, 2203 & n. 5, 2207, 45 L.Ed.2d 343, 352 & n. 5, 356-57 (1975). But this problem, if it is a problem, is of no moment here because there is a complete lack of showing that those plans continued to exist in 1979. The plaintiffs do not suggest that any 1979 "exclusive-high rent" project had any connection to minority interests.
 
 
 7
 The just compensation attack is predicated on the fact that the property had a fair market value of $285,000.00 when zoned R-4 but was reduced to a value of only $135,000.00 after it was rezoned to an R-2 classification. One expert for the plaintiffs, Dr. L.T. Reeves, Jr., represented that the highest and best use of the property from an economic point of view was that of multiple family use. There is no indication that the property was deprived of its entire value as a result of the rezoning.THE DISTRICT COURT ORDER
 
 
 8
 In granting the defendants' motion for summary judgment, the district court first held there was no legal basis for the cause of action alleged under the Fair Housing Act because the lack of a "proposed project" precluded a finding of injury in fact under the tests set out in Village of Arlington Heights v. Metropolitan Housing Devel. Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) and Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This was true, implied the court, even though the plaintiffs demonstrated an injury resulting from the diminution of the property's value. Additionally, the district court found that the plaintiffs did not identify the third parties whose interests they might assert under the Fair Housing Act. The just compensation complaint was likewise dismissed for the reason that the acts attributable to the defendants did not constitute an unlawful taking violative of the United States Constitution.
 
 
 9
 The district court then abstained from deciding the other constitutional claims, specifying three considerations for its conclusion. First, it found that a determination of the state law issues could eliminate the need to decide the federal constitutional questions, or could present the federal issues in a different posture. Second, the plaintiffs had not exhausted their remedies before the zoning authorities and in the state courts. Finally, the court reasoned that intervention into zoning matters was inappropriate because zoning is "a sensitive matter subject to comprehensive local regulation," and resulting federal-state conflict would be "unseemly" and unnecessarily impair the state's zoning function. Believing the last ground for abstention was governed by Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the court dismissed the action without prejudice.
 
 STANDING UNDER THE FAIR HOUSING ACT
 
 10
 The plaintiffs assert that the demise of their 1976 "proposed project" constitutes an injury permitting them to sue under the Fair Housing Act. As noted earlier, this project was no longer in existence at the time this action was filed. Warth v. Seldin is dispositive of this claim. There a building developer applied in late 1969 for a zoning variance to allow construction of a housing project. The Court noted that:
 
 
 11
 The complaint, however, does not allege that the Penfield Better Homes project remained viable in 1972 when this complaint was filed, or that respondents' actions continued to block a then-current construction project. In short, neither the complaint nor the record supplies any basis from which to infer that the controversy between respondents and Better Homes, however vigorous it may once have been, remained a live, concrete dispute when this complaint was filed.
 
 
 12
 422 U.S. at 517, 95 S.Ct. at 2214-15, 45 L.Ed.2d at 365-66 (footnote omitted).
 
 
 13
 The plaintiffs contend further that the diminution in value of their property as a result of the defendants' conduct is an injury in fact, and thus they have standing under §§ 812(a) and 817 of the Fair Housing Act, 42 U.S.C. §§ 3612(a) and 3617. We consider these sections in turn. Section 812(a) of the Fair Housing Act provides, in pertinent part:
 
 
 14
 The rights granted by sections 3603, 3604, 3605, and 3606 of this title may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy ....
 
 
 15
 The Supreme Court held in Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 108-09, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66, 82 (1979), that § 812 provides "parallel remedies to precisely the same prospective plaintiffs" as does § 810. Section 810(d) of the Act provides that after the expiration of a period for administrative remedies,
 
 
 16
 the person aggrieved may ... commence a civil action in any appropriate United States district court, against the respondent named in the complaint, to enforce the rights granted or protected by this subchapter, insofar as such rights relate to the subject of the complaint.
 
 42 U.S.C. § 3610(d) (emphasis added).[4]
 
 17
 The policy behind the Fair Housing Act emphasizes the prevention of discrimination in the provision of housing on the basis of "race, color, religion, sex, or national origin." E.g., 42 U.S.C. § 3604(a); see id. § 3601. Simply stated, the plaintiffs offered no evidence that they possess "rights granted" by the Fair Housing Act. Their interest in value of the property in no way implicates values protected by the Act. Section 810(d), 42 U.S.C. § 3610(d), goes further, however, to grant standing "to enforce the rights ... protected " by the substantive provisions. (Emphasis added.) Recent decisions of the Supreme Court shed some light on these words.
 
 
 18
 The Court first considered standing under § 810 of the Fair Housing Act in Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). The plaintiffs, a white and a black resident of an apartment complex, alleged that they had lost the social and professional benefits of living in an integrated community, including both intangible and economic injury. Believing that this constituted sufficient injury in fact for purposes of Article III, the Court went on to hold that the allegations also brought the plaintiffs within the zone of interests protected by the Fair Housing Act. The reference to "the person aggrieved"
 
 
 19
 showed "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution" ... insofar as tenants of the same housing unit that is charged with discrimination are concerned.
 
 
 20
 409 U.S. at 209, 93 S.Ct. at 367, 34 L.Ed.2d at 419.
 
 
 21
 The Court then focused on the scope of Fair Housing Act standing in Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The precise issue in Gladstone was whether the class of plaintiffs permitted to sue under § 812 of the Act was as broad as that allowed under § 810. The Court said that a showing of injury to the plaintiffs' community as in Trafficante coupled with economic injury to the value of the plaintiffs' homes was sufficient to establish standing under the Fair Housing Act on a motion for summary judgment. 441 U.S. at 114-15, 99 S.Ct. at 1615, 60 L.Ed.2d at 85-86. The impact of Gladstone, according to the plaintiffs, is that Congress intended to remove all prudential limitations from standing under the Fair Housing Act so that any party injured in some manner could sue to enforce the rights directly protected by the Act.
 
 
 22
 In our view, the decision in Gladstone may not be taken so far. The Court held that parties who demonstrate an interest in "racial balance and stability," as did the Village of Bellwood, or "the social and professional benefits of living in an integrated society," as did the individual plaintiffs, who also show an economic injury, may bring an action under § 812. There is no indication that the Court intended to extend standing, beyond the facts before it, to plaintiffs who show no more than an economic interest which is not somehow affected by a racial interest. There is no suggestion, either in the Act or its legislative history, that Congress intended to entrust the enforcement of the Fair Housing Act to such plaintiffs. Accord, Amdur v. City of Chicago, 638 F.2d 37, 39 n. 3 (7th Cir.), cert. denied, --- U.S. ----, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981); cf. Churchill Truck Lines, Inc. v. United States, 533 F.2d 411 (8th Cir. 1976) (economic injury alone not sufficient for standing under NEPA). This does not mean that only non-economic interests may be protected by the Act. See, e.g., Williams v. Miller, 460 F.Supp. 761 (N.D.Ill.1978), aff'd mem., 614 F.2d 775 (7th Cir. 1979); cf. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (standing to assert constitutional rights of third parties). See generally Village of Arlington Heights v. Metropolitan Housing Devel. Corp., 429 U.S. at 263, 97 S.Ct. at 562, 50 L.Ed.2d at 463. No economic interest justifying such treatment has been identified or shown in this case. We therefore hold that the plaintiffs do not have standing under § 812 of the Fair Housing Act, 42 U.S.C. § 3612.
 
 
 23
 The plaintiffs also urge that they may sue under § 817 of the Act, which provides:
 
 
 24
 It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section (sic ) 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action.
 
 
 25
 42 U.S.C. § 3617. Apart from the citation of the section, there is no allegation of interference with the plaintiffs' rights or that they have aided or encouraged any other person in the exercise or enjoyment of any right protected by the Act. Consequently, this avenue is closed to the plaintiffs.
 
 JUST COMPENSATION
 
 26
 The plaintiffs' own evidence as contained in Nasser's affidavit establishes that they have no claim for a taking without just compensation. Neither deprivation of the most beneficial use of the land, United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228, 1236 (1958); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), nor a severe decrease in the value of property; Goldblatt v. Hempstead, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130, 133-34 (1962); Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), measures up to an unlawful taking. "Government could hardly go on if, to some extent, values incident to property could not be diminished without paying for every such change in the general law." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322, 325 (1922). The district court correctly disposed of the just compensation claim on the motion for summary judgment. See generally Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).
 
 ABSTENTION
 
 27
 The district court abstained with respect to both the arbitrary and capricious and procedural due process causes of action. The plaintiffs appeal the decision to abstain only on the ground that the district court should have heard the arbitrary and capricious claim. No contention is made that the purported due process violation should have been entertained by the district court. The abstention as to federal procedural due process is therefore affirmed. See Kemlon Prod. & Devel. Co. v. United States, 646 F.2d 223 (Former 5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); Jefferies v. Harris County Comm'y Action Ass'n, 615 F.2d 1025, 1028 n. 3 (5th Cir. 1980); Burns v. Travelers Ins. Co., 344 F.2d 70 (5th Cir. 1965).[5] We consider then only the propriety of the district court's abstention on the arbitrary and capricious claim.
 
 
 28
 Abstention from the exercise of federal jurisdiction is confined to three general categories of cases. See Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, 496 (1976). Two types of abstention are relevant here. It is apparent from the circumstances of this case that Younger abstention is inapplicable. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 29
 A federal action may be stayed pending state proceedings "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This form of abstention is commonly referred to as the Pullman doctrine. The possibility that a state statute may have been violated, standing alone, does not justify Pullman abstention. Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515, 520 (1971). The issues of state law must be substantially uncertain or ambiguous, necessitating a construction by the state supreme court. Id. at 438-39, 91 S.Ct. at 511, 27 L.Ed.2d at 520. Moreover, there must be a likelihood that their resolution would moot or present the federal constitutional questions in a different posture. Scheinberg v. Smith, 659 F.2d 476 (5th Cir. Unit B 1981); Duncan v. Poythress, 657 F.2d 691 (Former 5th Cir. 1981); Palmer v. Jackson, 617 F.2d 424 (5th Cir. 1980); see New Motor Vehicle Board v. Orrin W. Fox Co., 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978). Neither the district court nor the defendants identify any unsettled issue of Alabama law which would require Pullman abstention. Consequently, abstention on that ground was erroneous.
 
 
 30
 A second category of abstention stems from Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In Burford the Court upheld abstention where "exercise of federal review of the (state law) question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483, 496 (1976). The Texas legislature had centralized the administration of a regulatory scheme for oil and gas in one agency, with judicial review in a single state district court in Travis County, Texas. 319 U.S. at 325-26, 63 S.Ct. at 1103, 87 L.Ed. at 1430-31. Inconsistent federal interpretation of state law, often involving narrow and difficult questions requiring specialized knowledge of oil and gas matters, had resulted in uncertainty and confusion in the state's conservation program, with possible irreparable loss of the state's resources. Id. at 324, 327-31, 63 S.Ct. at 1102-03, 1104-06, 87 L.Ed. at 1429-30, 1431-33. Finding that these circumstances justified abstention,[6] the Court held that dismissal of the action, rather than a stay, was appropriate. It further suggested that the federal issues should be submitted to the state courts. Id. at 334, 63 S.Ct. at 1107, 87 L.Ed. at 1435; see England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 415 n. 5, 84 S.Ct. 461, 464 n. 5, 11 L.Ed.2d 440, 445 n. 5 (1964).
 
 
 31
 Because abstention on Burford grounds is a refusal to exercise federal jurisdiction in an entire class of cases, it is perhaps the most potent device in an area of "extraordinary and narrow exception(s) to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). Whether Burford should be applied in cases challenging zoning ordinances on constitutional grounds is a question of first impression in this circuit.[7] The Ninth Circuit, the only Circuit facing this problem, expressly refused to extend Burford abstention to zoning cases. IBEW, Local 1245 v. PSC, 614 F.2d 206 (9th Cir. 1980). The court there noted two distinctions from Burford : (1) that the state had not concentrated decision-making on zoning matters in a particular or centralized forum, and (2) that the federal issues in the case were easily separable from any state questions requiring the special competence of state courts. 614 F.2d at 211.
 
 
 32
 Alabama has not established a single forum for resolution of zoning disputes. Each city may establish zoning commissions and a board of zoning adjustment. Ala.Code §§ 11-52-79, 11-52-80 (1975). We therefore perceive no state interest in uniformity which would be disrupted by federal review of zoning ordinances. The federal issues in this case are easily distinguishable from the state issues, since review of zoning under the arbitrary and capricious standard is strictly limited. E.g., Couf v. DeBlaker, 652 F.2d 585 (Former 5th Cir. 1981). Accordingly, we conclude that Burford abstention was inappropriate in this case.
 
 
 33
 The defendants argue that South Gwinnett Venture v. Pruitt, 491 F.2d 5 (5th Cir.) (en banc), cert. denied, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974) requires abstention in this case. South Gwinnett also involved an arbitrary and capricious zoning claim, which was rejected by the district court on the merits. Our admonition that it is "not the function of federal district courts to serve as zoning appeal boards," id. at 6, delineated the scope of federal review under the due process clause. Id. at 7 (citing Higginbotham v. Barrett, 473 F.2d 745 (5th Cir. 1973)). The level of constitutional scrutiny, a question going to the merits, is irrelevant to whether jurisdiction should be exercised in the first instance.
 
 EXHAUSTION AND RIPENESS
 
 34
 This court recently held, sitting en banc, that exhaustion of administrative remedies may be required in an action brought pursuant to 42 U.S.C. § 1983 under certain conditions. Patsy v. Florida Internat'l Univ., 634 F.2d 900 (Former 5th Cir.) (en banc), cert. granted sub nom. Patsy v. Florida Bd. of Regents, --- U.S. ----, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). The district court entered its order before Patsy was decided, and did not determine whether Homewood had established a Board of Adjustment pursuant to Alabama Code § 11-52-80 (1975), or if so, whether the plaintiffs' failure to request a variance under that statute, see generally McLarty v. Borough of Ramsey, 270 F.2d 232 (3d Cir. 1959), should be excused because it fell within an exception to the exhaustion rule. See, e.g., 634 F.2d at 903-04. The record before us does not permit a determination of either issue. Because of this omission, this action must be remanded to the district court for further consideration in light of Patsy.
 
 REASONABLENESS OF THE ZONING
 
 35
 In ruling on the defendants' motion for summary judgment, the district court did not reach the merits of the plaintiffs' contention that the zoning ordinance was arbitrary and capricious because it did not bear a substantial relation to public health, safety and welfare. The defendants argue here that the dismissal of the arbitrary and capricious claim should be affirmed on the merits in this court. We have the authority to affirm a summary judgment on a ground raised but not considered in the trial court in an appropriate case. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Liberty Glass Co. v. Allstate Ins. Co., 607 F.2d 135 (5th Cir. 1979).
 
 
 36
 Federal review of zoning decisions under the arbitrary and capricious standard is extremely narrow:
 
 
 37
 A zoning commission is a quasi-legislative body. It is not required to make findings of fact or state the reasons for the action taken. Its actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare.
 
 
 38
 South Gwinnett Venture v. Pruitt, 491 F.2d at 7; see, e.g., Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Couf v. DeBlaker, 652 F.2d at 588; Stone v. City of Maitland, 446 F.2d 83 (5th Cir. 1971). We nevertheless indicated that where evidence demonstrating arbitrariness is adduced, "there must be some basis in fact and law to justify the zoning action as consistent with reasonableness." 491 F.2d at 7; see, e.g., City of Ann Arbor v. Northwest Park Const. Corp., 280 F.2d 212 (6th Cir. 1960). The present record is insufficient to establish the facts upon which the city council based its zoning decision. Under these circumstances the better procedure would be remand of the arbitrary and capricious cause of action to the district court, along with the exhaustion and state law issues.
 
 
 39
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.
 
 
 
 [1]
 When a motion to dismiss is transformed into a motion for summary judgment under Fed.R.Civ.P. 12(b), and the moving party supports the motion as provided in Fed.R.Civ.P. 56, the burden shifts to the opposing party to produce specific facts showing that there is a genuine issue of a material fact requiring a trial. See Cole v. Elliott Equip. Co., 653 F.2d 1031 (Former 5th Cir. 1981); Cubbage v. Averett, 626 F.2d 1307 (5th Cir. 1980); Bernard v. Gulf Oil Co., 596 F.2d 1249 (5th Cir. 1979), appeal after remand, 619 F.2d 459 (5th Cir. 1980) (en banc), aff'd, --- U.S. ----, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)
 
 
 [2]
 The record does not clearly indicate whether the property is presently used for single-family occupancy. Fred Nasser, one of the appellants, referred to the property as the family "homestead," and one witness described it as a "tract of land." There is no suggestion, however, that any development on the property would bear on the issues before us
 
 
 [3]
 It is not clear that Barbour's statement regarding Nasser's intent was admissible in opposition to the motion for summary judgment. No objection was made to the statement on this ground, however, and we assume for purposes of this appeal that the statement was properly before the district court
 
 
 [4]
 The "complaint" to which the statute refers in the language, "insofar as such rights relate to the subject of the complaint," is the administrative complaint filed before the Secretary of Housing and Urban Development under § 810(a) of the Act, 42 U.S.C. § 3610(a). It is not a limitation upon a party's standing in the district court. Cf. 114 Cong.Rec. 2270, 2271 (1968) (early version of the Act permitted suit "insofar as such rights relate to the subject of the charge")
 
 
 [5]
 The plaintiffs' brief states the abstention issue as
 whether it is proper for a federal court to abstain (in a just compensation case) until the state courts are given an opportunity to determine whether the defendants' actions were unconstitutional under their own constitutional provisions.
 Appellants' Brief at 19. We can identify a potential federal procedural due process violation only by a very liberal reading of the complaint and other documents filed in this action and appeal. It may be that the plaintiffs' procedural due process cause grows out of state rather than federal law. Neither the complaint nor the district court's order is specific on this point. The challenges under procedural due process and Alabama notice provisions are pled separately in the complaint, which alleges only
 That the attempted passage of said Ordinance No. 1385 was violative of procedural due process and contrary to the prescribed state law procedure and is therefore void.
 Each mention of procedural due process in the plaintiffs' brief suggests that it is based on state law. Id. at xi, xxi-xxii, 20, 22. If the plaintiffs intended to contest the dismissal of any federal procedural due process claim, it was incumbent upon them to specifically point to that issue.
 Our disposition of the federal procedural due process question, of course, does not affect any issue arising under the Alabama Constitution.
 
 
 [6]
 In determining to abstain on Burford grounds, the district court followed Kent Island Joint Venture v. Smith, 452 F.Supp. 455, 461 (D.Md.1978), which characterized Burford abstention as "appropriate to avoid needless state-federal friction caused by federal interference with the administration by the state of its own purely local affairs." This formula overstates the principle of Burford, as both the facts of Burford and its subsequent treatment in Colorado River suggest
 
 
 [7]
 We have held in prior cases that Pullman abstention may be appropriate in a zoning dispute involving federal constitutional claims. E.g., Hill v. City of El Paso, 437 F.2d 352 (5th Cir. 1971). The district court here incorrectly relied on Hill to support its abstention under Burford. It is true that we noted in Hill that zoning is "distinctly a feature of local government." Id. at 357. A state's substantial interest in the question to be resolved is, however, a traditional feature of Pullman abstention. 312 U.S. at 498, 61 S.Ct. at 644, 85 L.Ed. at 973