**BAYTREE OF INVERRARY REALTY PARTNERS, Plaintiff–Appellant,**

v.

**The CITY OF LAUDERHILL, et al., Defendants–Appellees.**

No. 88–5373.

United States Court of Appeals, Eleventh Circuit.

May 26, 1989.

Steven M. Davis, Broad and Cassel, Miami, Fla., Michael H. Sussman, Sussman & Sussman, Yonkers, N.Y., Alan J. Kan, Bedzow, Korn, Kan & Glaser, P.A., Boca Raton, Fla., for plaintiff-appellant.

Michael T. Burke, Fleming, O'Bryan & Fleming, Ft. Lauderdale, Fla., for defendants-appellees.

Andrew S. Maurodis, Broward County Office of Gen. Counsel, Barbara A. Hall, Ft. Lauderdale, Fla., Daniel P. Hogan, Chicago, Ill., for Broward City et al.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

RONEY, Chief Judge:

Baytree of Inverrary Realty Partners (Baytree) filed suit against the defendants challenging their failure to grant Baytree's application to amend a city zoning ordinance to allow Baytree to build a low-income residential complex. Baytree alleged that defendants' conduct was racially motivated. The district court held that: (1) Baytree lacked standing to bring the action; (2) the individually-named defendants were entitled to absolute immunity; and (3) Baytree's regulatory takings claim was not ripe. Baytree does have standing to seek injunctive relief. We affirm in part, reverse in part, and remand.

Baytree, a real estate developer, owns approximately twenty acres of land in Lauderhill, Broward County, Florida. Baytree's assignor contracted to purchase the land with the intent to develop a rental apartment complex on it. The Broward County Commission (Commission) approved bond financing with the condition that twenty per cent of the rentals be available to low/moderate income tenants. Having received authorization for the bonds, Baytree finalized the purchase. At the time financing was obtained, the property was classified for land use purposes as "C" (commercial) by the County, and "CO" (commercial office) by the City. It was zoned by the City as "C–3" (general business). Baytree applied to the City to have the land use classification changed to "R" (residential). The City Council recommended that the County deny the application. Baytree alleged that the recommendation was influenced by residents' expressed fears that low cost housing would cause an influx of black residents. The Broward Planning Council, upon consideration of the recommendation, denied the amendment. Baytree alleges that this decision was also influenced by the residents' expressed fears. The Planning Council forwarded its denial to the Commission, which unanimously voted to deny the application on June 30, 1987. In October of 1986, the Lauderhill defendants rezoned the property from "C–3" to "CO–1" (limited office). Plaintiff alleges that the property as rezoned is worthless, and that the rezoning decision was also influenced by the residents' expressed fears.

■ Taking, as we must, the material allegations in the complaint as true, and construing the complaint in favor of Baytree, *see Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979), we hold that it has standing to maintain this action. First, Baytree has satisfied the constitutional requirements under Article III because it has alleged a personal injury fairly traceable to the challenged conduct and a likelihood of redress by the requested relief. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Defendants' racially motivated actions allegedly preclude Baytree from building the type of development for which it received bond financing, and the proposed project can be built if the rezoning is effectuated. Baytree certainly has satisfied the constitutional standing requirements so as to allow it to assert its own right to be free of arbitrary and intentional zoning decisions, to the extent that defendants' actions are characterized as such. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977).

The defendants argue that there is no standing in this case, however, because of the so-called "prudential" limitations. These prudential principles recognize, *inter alia,* that even a plaintiff who has satisfied the Article III requirements must still assert his own legal rights and interests, and not those of third parties. *See Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 759–60. The district court held that Baytree, a non-minority developer, had no standing because it was asserting the rights of hypothetical third persons. Whether non-minority developers have standing to pursue civil rights claims which allege that a local government's zoning decisions have a discriminatory adverse effect

on racial minorities is an issue left open by the Supreme Court. *See Village of Arlington Heights,* 429 U.S. at 263–64 & n. 9, 97 S.Ct. at 562–63 & n. 9. That, however, is not the case here, for Baytree argues its own injury from zoning decisions which are motivated by racial animus, not the injury that would be incurred by prospective tenants.

Decisions subsequent to *Village of Arlington Heights* recognize that non-minority developers such as Baytree do have standing to assert their own right to challenge allegedly racially motivated adverse zoning decisions by local governmental officials. *See, e.g., Cutting v. Muzzey,* 724 F.2d 259, 260 (1st Cir.1984) (non-Italian developer had standing to bring civil rights action against members of town planning board, alleging that board's imposition of certain conditions on the development of the subdivision was motivated by racial animus towards developer's purchasers, all of whom had Italian surnames); *Scott v. Greenville County,* 716 F.2d 1409, 1415–16 (4th Cir.1983) (non-minority developer seeking to construct low-income apartments had standing to bring civil rights action challenging defendants' alleged racially motivated withholding of building permit); *Des Vergnes v. Seekonk Water District,* 601 F.2d 9, 13–14 (1st Cir.1979) (developer of subdivision designed to accommodate low-income and/or black persons had standing to bring civil rights action to challenge alleged racially motivated denial of inclusion of subdivision in town water district).

Baytree also has standing to pursue its housing acts claims. Under the Fair Housing Act, 42 U.S.C.A. §§ 3604 and 3617, standing is not limited by prudential concerns but is satisfied by the minimum constitutional "case or controversy" requirement of Article III. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1120, 71 L.Ed.2d 214 (1982). This case is unlike *Nasser v. City of Homewood,* 671 F.2d 432, 437 (11th Cir.1982), in which plaintiffs alleged only an economic injury unaffected by any racial interest. Here, Baytree alleges its injury results from racial animus. Thus, Baytree's allegation of injury was sufficient to establish standing under the Fair Housing Act. Standing under Florida's statutes, Fla.Stat.Ann. §§ 760.23 and 760.37 (1986), should be treated similarly because these sections are identical in substance to the federal statutes.

■ The district court properly ruled that the individual defendants have absolute immunity from any federal suit for damages if their challenged conduct furthers legislative duties. *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). The complaint challenges defendants' conduct in denying plaintiff's application to rezone its property. Under both federal and Florida law, zoning and land use decision-making, such as that presented here, is normally characterized as a legislative function. *See, e.g., Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193–94 (5th Cir.1981) (mayor's veto of zoning ordinance passed by city's legislative body), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Bruce v. Riddle,* 631 F.2d 272, 280 (4th Cir.1980) (local council members held to have acted within scope of legislative activities when they voted on zoning ordinance); *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc) (local zoning is quasi-legislative procedure, not subject to federal juridical consideration absent arbitrary action), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); *Florida Land Co. v. City of Winter Springs,* 427 So.2d 170, 174 (Fla.1983) (zoning ordinance which effected a change in zoning for a specific parcel of land was a legislative act); *Schauer v. City of Miami Beach,* 112 So.2d 838, 839 (Fla.1959) (amending zoning ordinance was legislative function).

■ We affirm the district court's dismissal of Baytree's claim that its property was taken without just compensation, because the argument is without merit, assuming *arguendo* that it is ripe. The substance of this claim is that the property, zoned as "CO–1" (limited office), renders the property worthless and constitutes a regulatory taking of the property.

Notwithstanding the Supreme Court's recognition that it has been "unable to develop any 'set formula'" for addressing a takings claim, *Pennsylvania Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), particular factors have been identified as significant:

> The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

*Id.* (citations omitted). Whether the health, safety, morals or general welfare are promoted, *id.* at 125, 98 S.Ct. at 2659, or whether the particular ordinance advances a legitimate state interest, *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), is also considered. "[W]hen the physical intrusion reaches the extreme form of a permanent physical occupation, a taking has occurred[,]" but that is not the case here. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3170, 73 L.Ed. 2d 868 (1982).

Baytree has only been told that it cannot build a 327–unit residential apartment complex on its property. It has not been told that no development of its property is allowed. That Baytree may not be able to develop exactly what it originally wanted does not mean that its investment-backed expectations are eradicated. The property is zoned for limited office development. Any zoning decision must necessarily take into consideration a proposed development's effect on public resources, such as water, roads, sewer, and police and fire protection, and therefore the general welfare is implicated. "Neither deprivation of the most beneficial use of land, nor a severe decrease in the value of property,

measures up to an unlawful taking." *Nasser v. City of Homewood*, 671 F.2d 432, 438 (11th Cir.1982) (citations omitted). There has been no taking by this rezoning. *Cf. Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (city's land zoning ordinance which restricted tract of land to single family residences did not amount to taking where zoning permitted different, albeit more limited, construction on property); *Nasser*, 671 F.2d at 438 (defendant's rezoning of property from multi-family residential use to single-family residential use did not amount to taking, even where rezoning reduced fair market value of property from $285,000 to $135,000). The conclusory allegation that the property has been rendered worthless for private purposes, if not frivolous, is at least insufficient to withstand a motion to dismiss.

There is, therefore, no basis for the allegation of $30,000,000 of damages against either the private parties or the public defendants and the claim for damages was properly dismissed.

This decision addresses only those issues decided by the district court and reflects no opinion concerning the merits of the other issues presented in this case.

AFFIRMED in part; REVERSED in part; and REMANDED.