Clarence Eugene BROWN,
Plaintiff–Appellee,

v.

CRAWFORD COUNTY, GA., Defendant,

Alfornia Hatcher, Perry Atkinson, Raymond Corbin, Freddie Tidwell, and David Moncrief, individually and in their official capacities as members of the Board of Commissioners of Crawford County, Ga., and John Doe and other unknown individuals, Defendants–Appellants.

No. 91–8344.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1992.

W. Warren Plowden, Jr., Jones, Cork & Miller, Gregory C. Morton, Macon, Ga., Thomas M. Green, Mincey & Green, Roberta, Ga., for defendants-appellants.

Charles A. Mathis, Jr., Mathis, Jordan & Adams, Harold S. Lewis, Milledgeville, Ga., for plaintiff-appellee.

Before HATCHETT and BIRCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This case concerns the question of whether county commissioners were entitled to absolute immunity when they voted to place a temporary moratorium on issuing permits for mobile homes in order to

study residential county development. The district court denied the commissioners' motion to dismiss. Because the commissioners should have been accorded absolute legislative immunity, we reverse with instructions to grant the motion to dismiss.

## I. FACTUAL BACKGROUND

In 1987, Georgia Woodlands, Inc. (GWI) purchased a 330–acre tract of property in Crawford County, Georgia, and recorded a plat for a residential subdivision on January 20, 1988. This subdivision, known as Lake Deerwood, is impressed with restrictive covenants prohibiting mobile or manufactured homes and limiting the subdivision to conventional site-built houses. On March 11, 1989, plaintiff-appellee Clarence Eugene Brown, a land developer, purchased a 195–acre tract of land situated across the street from Lake Deerwood. Under the existing zoning regulations, Brown's property was zoned as an agricultural-residential district. The previous owners of Brown's land had received approval from the Crawford County Planning and Zoning Commission (Planning and Zoning Commission) to develop the land as a residential subdivision, allowing manufactured or singlewide and doublewide mobile homes.[1]

Following his purchase of the land, Brown appeared at a regularly scheduled meeting of the Planning and Zoning Commission and presented for approval a plat for a residential subdivision of his property, known as Wildwood Estates. Brown also advised the Planning and Zoning Commission that he intended to develop the subdivision for mobile homes. At the time that Brown purchased his property, Lake Deerwood was being developed, and GWI senior vice president William E. Beasley was constructing a residence there. Beasley openly expressed his concern that potential purchasers of lots in Brown's Wildwood Estates would place mobile homes on those lots and degrade the value of the neighboring property in Lake Deerwood.

Beasley and another Crawford County resident sponsored a petition objecting to Brown's proposed subdivision. The petition, addressed to the Crawford County Board of Commissioners (Board of Commissioners), was signed by more than 100 Crawford County residents. At the regularly scheduled Board of Commissioners meeting on April 3, 1989, Beasley and a number of county residents presented their petition, and discussed their concerns regarding Brown's proposed mobile home subdivision.

Thereafter, the Board of Commissioners instructed the county attorney to draft a resolution placing a temporary moratorium of general application on mobile home permits for the southeastern portion of Crawford County, encompassing approximately one third of Crawford County, consisting of approximately 150 square miles. The moratorium was to be effective pending the completion and review of a comprehensive development plan being prepared by the Middle Georgia Development Center, which had been requested by the Board of Commissioners in the spring of 1988, to submit a development plan for Crawford County with recommendations for amendments and new zoning regulations.[2] The Board of Commissioners decided to call a special meeting on April 5, 1989, to review the proposed resolution.

The moratorium resolution was presented at the special meeting. The proposed moratorium prevented the county from issuing mobile home permits on any included property containing less than twenty-five acres unless the property was part of a subdivision which had received final plat approval prior to the moratorium and in which one or more lots had been deeded to individual purchasers by the developer. The moratorium also excepted cases in

---

1. At oral argument, counsel explained that both preliminary and final approval from the Planning and Zoning Commission must be obtained before a plat could be recorded preceding deed conveyance. At that stage only could application for a mobile home permit be made.

2. The parties in this case acknowledge that the area targeted by the moratorium has experienced the greatest growth and development in Crawford County.

which application for a mobile home permit had been made prior to passage of the moratorium, and the applicant had expended funds or otherwise substantially changed position based upon assurances from zoning officials that mobile homes were a permitted use. The period of the moratorium was to be ninety days, subject to continuance for an additional ninety-day term if the Board of Commissioners had not acted on the recommendations of the Middle Georgia Development Center by adopting a revised zoning plan. The Board of Commissioners voted unanimously to enact the proposed moratorium at its special meeting on April 5, 1989.

Brown and other land developers affected by the moratorium received a copy of the resolution from the Board of Commissioners with an explanatory letter from the county attorney, both of which are exhibits to his complaint. In pertinent part, the letter informed the developers as follows regarding the effect of the moratorium:

> The resolution should be self-explanatory. It attempts to protect existing lot owners. It also attempts to protect developers of mobile home subdivisions who have already sold at least one lot in their subdivision. As you may know, the Middle Georgia APDC is currently revising Crawford County's zoning ordinance and maps. Those revisions may affect subdivisions that are now in the process

of development. For the protection of all concerned, it was decided by the Board that mobile home developments should be put on hold pending those revisions.

Brown's plat received final approval on April 14, 1989, following adoption of the moratorium. Because Brown did not obtain final approval and sell at least one lot prior to imposition of the moratorium, no mobile home permits could be issued to prospective purchasers in Wildwood Estates. Brown, however, could sell lots for the construction of any other occupancy. At least one other developer was affected similarly by the moratorium.

Brown initiated this action under 42 U.S.C. §§ 1983 and 1985 against Crawford County and the Board of Commissioners in their official and individual capacities. His complaint alleges that the defendants conspired to prevent him from developing his property for the intended purpose as a mobile home subdivision, when the Board of Commissioners enacted a temporary moratorium, which prevented issuing mobile home permits in the portion of Crawford County where Brown's property is located. He contends that the moratorium violated his rights under the Fifth and Fourteenth Amendments by taking his property without just compensation and depriving him of procedural and substantive due process, and equal protection.[3] Brown

---

3. Brown was not affected singularly; other land developers also were impacted by the moratorium. As county commissioners, defendants-appellants were concerned about the proliferation of mobile and manufactured homes in the specified area, which was being developed rapidly. Such residences generate lower tax revenues than site-built homes. Potentially, these lesser funds would be insufficient to provide necessary county services, including schools, roads and garbage collection. Clearly, the intent of the Board of Commissioners in requesting the comprehensive development plan was a revision of the zoning of Crawford County. Under equal protection analysis, unless a suspect class or a fundamental right is implicated, zoning regulations "must only be rationally related to a legitimate government purpose." *Eide v. Sarasota County,* 908 F.2d 716, 722 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Executive*

*100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *see Grant v. County of Seminole,* 817 F.2d 731, 735 (11th Cir.1987) (per curiam) (County zoning laws excluding manufactured and mobile homes in specific areas were determined to have been "legislated to further legitimate public purposes."). In addition, "[o]rdinarily a zoning regulation comports with due process if 'there was any possible rational basis for legislation.'" *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1273 (5th Cir.1988) (quoting *Shelton v. City of College Station,* 780 F.2d 475, 481 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986)), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

Following the Board of Commissioners' approval, the parties recognize that any amendment, supplement or change to the existing zoning regulations must be submitted in writing to the county zoning enforcement officer, noticed to the public, and a public hearing held thereon.

also claims similar violations under the Georgia Constitution. His complaint seeks compensatory and punitive damages, declaratory and injunctive relief against the defendants as well as attorneys' fees and costs under 42 U.S.C. § 1988.

## II. PROCEDURAL PROBLEMS

Review of this case is complicated by docket omissions and unusual procedures employed by the district court. Defendants-appellants represent that three days after the complaint was filed on August 2, 1989, the district court conducted a hearing on Brown's request for temporary injunctive relief. There is no transcript of this hearing in the record submitted to this court. Defendants-appellants state that the district court directed that they either lift the moratorium or be subjected to an injunction accomplishing that result. Defendants-appellants explain that the moratorium was lifted subsequent to the district court's direction and that court was so advised.[4]

The docket shows that Chief Judge Wilbur D. Owens, Jr. sent a "Memorandum to Counsel" on his letterhead stationery on October 10, 1989. This memorandum, addressed to Brown's counsel with copies to defendants' counsel and the city attorney, directs the counsel to prepare a delineated discovery order. Chief Judge Owens admonishes the counsel that "[i]f the court

does not receive a proposed Rule 16(b) and Rule 26(f) combined order *within thirty (30) days*, the court will direct all of you to appear in Macon for a conference preparatory to the court['s] fashioning and entering such orders." The discovery order was entered by Chief Judge Owens on January 2, 1990.

Thereafter, full discovery, including depositions of all the individual defendants-appellants comprising the Board of Commissioners, ensued. The joint pretrial order was filed on November 7, 1990. Among the issues for trial, defendants-appellants list: "Whether the individual county commissioners are entitled to absolute immunity in this case." Defendants-appellants include the following caveat concerning trial in the joint pretrial order:

> Defendants contend that they are entitled to a judgment as a matter of law as to all of Plaintiff's claims. Defendants therefore do not agree that there is any issue for determination by the jury in this action. Defendants only agree that the issues listed below have been framed by the pleadings. Plaintiff, however, asserts that Defendants' contentions that they are entitled to judgment as a matter of law are erroneous.

The next docket entry available to this reviewing court is the individual defendants-appellants' motion to dismiss on the basis of absolute immunity. Therein, de-

---

The Board of Commissioners engaged the Middle Georgia Development Center to provide them with specialized and experienced advice for *revising the zoning in Crawford County.* Accordingly, the commissioned comprehensive development plan was *preliminary* to the notice and hearing procedures required for public acceptance and official zoning changes. Brown's alleged procedural due process violations, therefore, are premature. *Significantly,* the Board of Commissioners saw the need for zoning revisions in Crawford County *prior* to the initiation of this action by Brown in August, 1989, because the comprehensive development plan was commissioned in the spring of 1988. A draft of the Crawford County development plan was submitted to the county in the summer of 1989, *after* imposition of the moratorium. Not only is Brown's procedural due process claim premature, but also his constitutional contentions relating to the moratorium, a temporary measure pending a final decision regarding Crawford

County zoning, are not ripe until the new zoning plan has been adopted. *See MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 349, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986) ("Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it."); *accord Executive 100,* 922 F.2d at 1540–41; *Eide,* 908 F.2d at 722–26.

**4.** The docket does show that the district court held an in-chambers hearing on the motion for preliminary injunction on August 25, 1989. The handwritten minute sheet, filed August 29, 1989, states: "Attorneys will confer with the County Commissioners and clients and report to the court whether hearing will be necessary next week. (Tuesday 9:30 AM if hearing is necessary). Attorneys will call Monday." The docket indicates no ruling on Brown's request for preliminary or permanent injunctive relief.

fendants-appellants contend that their unanimous vote passing the moratorium on issuing mobile home permits in a specified area of Crawford County was an exercise of their legislative decisionmaking authority. They additionally incorporate by reference their legal arguments and citation of authorities contained in their pretrial brief, filed contemporaneously with their motion to dismiss. Without explanation and stating that it had "carefully considered" the motion, the district court denied defendants-appellants' motion to dismiss. The individual defendants-appellants appealed that ruling.

Because defendants-appellants' motion to dismiss at issue in this case followed extensive discovery and the district court's pretrial order, this court at oral argument inquired into counsel's reason for filing a motion to dismiss at that stage of the proceedings rather than a summary judgment motion, the expected motion following discovery. Counsel for defendants-appellants informed the court that the district court had not permitted the filing of their requested summary judgment motion, based upon a local procedure in that court. Consequently and alternatively, the motion to dismiss was filed because defendants-appellants believed that there was a valid legal basis for dismissing the action against them.

Baffled by the district court's denial of a right accorded under Federal Rule of Civil Procedure 56 to file a summary judgment motion, the panel requested supplemental briefs providing and explaining the local procedure that prevented defendants-appellants from filing a motion for summary judgment pursuant to Rule 56. In response, counsel provided to this court "JUDGES FITZPATRICK'S AND OWENS' PROCEDURES AND POLICIES FOR CIVIL CASES,"[5] dated January, 1987. Currently effective, these "Procedures and Policies" include the following "procedure" for filing motions for summary judgment:

> *Motions for Summary Judgment.* As the decisions of the Eleventh Circuit regularly demonstrate, rarely can it be said without fear of contradiction that "there is no genuine issue as to any material fact." Because of this the filing of motions for summary judgment is frequently a waste of your time, opposing counsel's time, our clerk's time, and the court's time—not to mention the expense of each party and the taxpayers. To assist you in avoiding the filing of summary judgment motions that have no possible merit, the court requests that before filing such a motion you advise the court and opposing counsel in person (call the judge for an appointment) or by letter if you desire to file such motion and your factual and legal reasons, *succinctly stated,* for believing you will prevail on the motion. Opposing counsel can then respond in person or by letter and the court can suggest whether or not the case seems to be appropriate for summary judgment. This is not intended to prohibit your filing such motions; it is only intended to facilitate your doing so.
>
> In considering the filing of a summary judgment motion, prepare to *include proposed findings of undisputed material facts* (with reference to source of facts) *and conclusions of law in your motion.* This will be required.[6]

---

5. We note that these "Procedures and Policies" state that there is only one local rule in the Middle District of Georgia: "There shall be no motion day." *Cf.* Fed.R.Civ.P. 78 (**Motion Day**: "Unless local conditions make it impracticable, each district court shall establish regular times and places, at intervals sufficiently frequent for the prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of; but the judge at any time or place and on such notice, if any, as the judge considers reasonable may make orders for the advancement, conduct, and hearing of actions.").

6. A similar procedure is stated for motions for partial summary judgment:

> *Motions for Partial Summary Judgment.* In *rare* instances a motion for partial summary judgment will resolve a pivotal issue and materially facilitate disposition of a case. If so, advise the court and counsel of your desire to file such a motion and of your reasons for believing it will dispose of a pivotal issue. Remember that partial summary judgments

■ Counsel also supplied this court with their letters to Chief Judge Owens concerning filing a summary judgment motion in this case in compliance with the local "procedure." After reviewing the facts and applicable law, counsel for defendants-appellants asserts that "the individual commissioners are entitled to absolute immunity in this case as they were acting in their legislative capacity in passing the moratorium." In response, Brown's counsel concludes that "a motion for summary judgment is inappropriate on the issue of absolute immunity." Following receipt of counsels' letters regarding filing a summary judgment motion, Chief Judge Owens informed counsel in a one-sentence letter that "I do not believe this is a case that should be decided on motion for summary judgment." Until this court's request, these letters were not part of the record in this case.[7]

Ostensibly, the local "procedure" purports "to facilitate" and not "to prohibit" the filing of summary judgment motions. It appears, however, that the district judges utilizing this "[p]rocedure" in the Middle District of Georgia effectively are precluding parties from filing summary judgment motions, as in this case. In their supplemental brief, defendants-appellants state that "the clerk's office in the Macon Division of the Middle District of Georgia will not accept a motion for summary judgment for filing unless it has been approved by the judge."

■ Under Rule 83 of the Federal Rules of Civil Procedure, each district court is authorized to "make and amend rules governing its practice *not inconsistent with these rules.*"[8] (emphasis added). *See* 28 U.S.C. § 2071(a); *Colgrove v. Battin,* 413 U.S. 149, 150–51, 93 S.Ct. 2448, 2449, 37 L.Ed.2d 522 (1973). District courts are not required to adopt local rules, but they *must not* circumvent the Federal Rules of Civil Procedure by implementing local rules or "procedures" which do not afford parties rights that they are accorded under the Federal Rules. *See Carver v. Bunch,* 946 F.2d 451, 453 (6th Cir.1991)

do not dispose of entire cases and therefore are not usually entertained; such issues can normally be aired and decided at pretrial. We note that the reasoning justifying this partial summary judgment "procedure" demonstrates a misunderstanding of the usefulness of partial summary judgments in expediting trials by narrowing legal issues and establishing facts not in controversy. *See* Fed.R.Civ.P. 56(d); *ODC Communications Corp. v. Wenruth Invs.,* 826 F.2d 509, 512 (7th Cir.1987) (per curiam) ("The partial summary judgment determines the ownership of that system, at least for the purposes of prejudgment possession, and probably also decides that issue for purposes of a later trial pursuant to Rule 56(d)."); *see also* Fed.R.Civ.P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

**7.** We are troubled that the district court's local summary judgment "procedure" precluded complete, informed review by this court because letters exchanged among the parties and the court pursuant to this "procedure" were not reflected on the docket and, therefore, were not part of the record heretofore. Had the panel at oral argument not inquired into the uncommon timing for filing the motion to dismiss before us, the local "procedure" would have evaded this court. It should not be necessary for this court to read between the lines of the docket and to ascertain at oral argument the procedure followed in a particular case by the district court. We emphasize to the district court that it is essential that communications between the trial court and the parties to an action as well as all rulings affecting the procedural rights of parties be shown on the docket and contained in the record to afford complete review by this court. Parties' procedural rights cannot be sacrificed in the interest of moving busy dockets.

**8.** Rule 83 also provides that local rules result from action by a majority of the judges of the specific district "after giving appropriate public notice and an opportunity to comment...." Fed.R.Civ.P. 83; *see* 28 U.S.C. § 2071(b). The local "Procedures and Policies" used in the Middle District of Georgia facially appear to be applicable to only two judges in that district, Chief Judge Owens and Judge Duross Fitzpatrick of the Macon Division. These "procedures" have not been subjected to the public comment procedure established in Rule 83. Although not called local rules, the local "procedures" instituted by two judges in the Middle District of Georgia govern the civil procedure of practitioners before these judges. We stress that the name given to local procedures is irrelevant. If the *purpose* of such local procedures, practices or policies is to control practice in a district court in this circuit, such procedures effectively are local rules and must be created in accordance with Rule 83.

("[L]ocal court rules ... cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court."); *Coady v. Aguadilla Terminal Inc.*, 456 F.2d 677, 678 (1st Cir.1972) ("[A] local rule cannot be applied if it is contrary to a federal statute or rule." (citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965))).

■ Federal Rule of Civil Procedure 56 makes no allowance for a preliminary "procedure" by the district court for reviewing, with the potential of denying, a party's prospective summary judgment motion. Essentially, the local summary judgment "procedure" that has been used in the Middle District of Georgia constitutes advance screening. Under Rule 56, a party *is entitled* to make a summary judgment motion, which the district court *then* may decide.[9] Indeed, a motion to dismiss for failure to state a claim for which relief can be granted may be converted into a summary judgment motion. Fed.R.Civ.P. 12(b).

The opportunity to move for summary judgment is being denied to practitioners in the Middle District of Georgia as a consequence of the local "procedure" utilized by these district judges. Because the local "procedure" for filing a summary judg-

ment motion in the Middle District of Georgia violates litigating parties' procedural and substantive rights under Rule 56, we find it to be invalid and direct that it cease forthwith.[10] *See Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir.1983) (In addition to concluding that the subject local rule was not inconsistent with any federal law or the Federal Rules of Civil Procedure, the court specifically found that no party's substantive rights were changed.); *cf. Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1279–82 (9th Cir.1981) (The court reversed a grant of summary judgment, where the opposing party filed a timely motion for oral argument, and the district court ruled without allowing oral argument in violation of its local rule and Federal Rule of Civil Procedure 56, resulting in prejudice to the opposing party by not affording it the opportunity to present significant constitutional arguments.). Effective immediately, parties in the Middle District of Georgia may file summary judgment motions in accordance with Rule 56 without submitting to the former, local preliminary review "procedure."

This court is greatly disturbed by the district court's pressing this case through discovery and preparing it for trial, when a

---

**9.** District courts within this circuit have adopted local rules governing the filing of summary judgment motions. *See, e.g.,* N.D.Ga. Local R. 220.5; S.D.Ga. Local R. 6.6; S.D.Fla. Local R. 10.J. These rules are based upon and effectuate Federal Rule of Civil Procedure 56; they do not circumvent that rule.

**10.** We are cognizant that properly adopted *local rules* are effective "unless modified or abrogated by the judicial council of the relevant circuit." 28 U.S.C. § 2071(c)(1). We distinguish this case because we address herein local "procedures" which have *not* been established as local rules in accordance with Rule 83 and 28 U.S.C. § 2071, but nevertheless are governing practice in the Middle District of Georgia and violating rights accorded to parties under Rule 56. *See United States v. Hastings,* 695 F.2d 1278, 1284 (11th Cir.) (This court previously reviewed a district court local rule and determined that it withstood a constitutional challenge.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983). We, however, do not foreclose the circuit judicial council's reviewing all of the civil "Procedures and Policies" used in the Mid-

dle District of Georgia, and its close monitoring of any revisions made in those local civil procedures.

We note the commentary of the Local Rules Project, prepared by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, and containing reviews of the local rules governing civil procedure in district courts nationally in comparison with the Federal Rules of Civil Procedure. Of the ninety-four federal district courts nationwide with approximately 5,000 local rules, the Local Rules Project reports that the Middle District of Georgia is an "extreme" and notable nationally as an aberration with "only one local rule and just one standing order." Local R. Project at 1 (1989). Addressing local rules specifically regarding summary judgment procedure, the Local Rules Project advises: "Fifty-six jurisdictions have local rules concerning the procedure for obtaining a summary judgment. Thirty of these jurisdictions have local rules that can conflict with Rule 56 of the Federal Rules of Civil Procedure. *These local rules should, therefore, be rescinded." Id.* at 140 (emphasis added).

valid, absolute immunity defense existed.[11] By prolonging this case, the district court failed to serve the purported goals of its local "procedure" of saving the parties as well as the court time and expense. This case should not have been prepared for trial; moreover, it should not have undergone discovery.[12] In the interest of judicial economy and to refrain from further defeating the purpose of the absolute immunity defense in this case, we will address the motion to dismiss before us as if it had been filed at the appropriate time, despite full discovery.[13]

## III. ANALYSIS

A motion to dismiss challenging the legal sufficiency of the complaint to state a claim for which relief may be granted preempts the necessity of a defendant's filing an answer until the motion is decided by the district court. Fed.R.Civ.P. 12(b). For a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). In such a situation, "Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint on the basis of a dispositive issue of law." *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989)).

Defendants-appellants' motion to dismiss based on absolute legislative immunity was denied in this case without commentary by the district court. "[D]enial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In civil cases, therefore, the Supreme Court has held that "the denial of a motion to dismiss based upon a claim of absolute immunity from suit is [an] immediately appealable" interlocutory order. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499, 109 S.Ct. 1976, 1979, 104 L.Ed.2d 548 (1989) (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982)); *see Crymes v. DeKalb County*, 923 F.2d 1482, 1484 (11th Cir.1991) (per curiam) ("It is clear that the district court's refusal to dismiss the complaint on absolute immunity grounds is an immediately

---

**11.** We particularly are troubled by the misrepresentation in the local summary judgment "procedure" stating that this court "regularly" finds genuine issues of material fact precluding summary judgment. Following the Supreme Court's clarification of genuine issues of material fact, this court consistently has upheld district courts' properly granting summary judgments. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because the *material* facts are not disputed, this case would have been appropriate for summary judgment disposition on the legal issue of absolute immunity. Defendants-appellants, however, were denied this opportunity, even after advising the district court that absolute immunity would be the basis of their summary judgment motion. They not only raised the absolute immunity defense in their motion to dismiss, but also discussed the supporting legal authority in their pretrial brief filed contemporaneously with their motion to dismiss. Counsel provided the district court with dispositive precedents for making a decision.

**12.** "[A]bsolute immunity ... is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2808, 86 L.Ed.2d 411 (1985); *see Harris v. Deveaux*, 780 F.2d 911, 913 (11th Cir.1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all."). Additionally, absolute immunity protects from "other burdens attendant to litigation, including pretrial discovery." *Marx v. Gumbinner*, 855 F.2d 783, 788 (11th Cir.1988).

**13.** We recognize that the thrust of Brown's argument is that absolute immunity was not pleaded in defendants-appellants' answer; they pled official and qualified immunity. A motion to dismiss generally is filed in response to the complaint and precedes an answer. Nevertheless, we will treat the subject motion to dismiss, with its assertion of absolute immunity, as if it had been filed at the appropriate time. To remand this case to allow defendants-appellants to amend their answer would render the same result and contravene judicial efficiency.

appealable 'collateral order' within the exception to 28 U.S.C. § 1291...."). To preserve its purpose, "entitlement to absolute immunity must be determined as early as possible," and appropriately on a motion to dismiss or for judgment on the pleadings. *Marx v. Gumbinner*, 855 F.2d 783, 788 (11th Cir.1988); *see* Fed.R.Civ.P. 12(b)(6) & 12(c).

"[O]fficials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Hafer v. Melo*, — U.S. —, —, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991) (citing *Burns v. Reed*, — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). "The absolute immunity of legislators, in their legislative functions, ... now is well settled." *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) (citations omitted); *see Hafer*, — U.S. at —, 112 S.Ct. at 363–64 (The Supreme Court has restricted absolute immunity to specified officials, including "legislators carrying out their legislative functions...."); *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984) ("The Court has recognized absolute § 1983 immunity for legislators acting within their legislative roles...." (citations omitted)). While the Supreme Court has extended absolute immunity to state legislators, *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and to regional legislators, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Court has not yet included local legislators.[14] *Spallone v. United States*, 493 U.S. 265, 278, 110 S.Ct. 625, 633–34, 107 L.Ed.2d 644 (1990). In *Spallone*, the Court advised that "some of the same considerations on which the immunity doctrine is based must inform the District Court's exercise of its discretion" in cases involving local legislators. 493 U.S. at 278, 110 S.Ct. at 634.

▪ The former Fifth Circuit extended absolute immunity under section 1983 to local legislators "for conduct in the furtherance of their duties." *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. Unit A May 1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *see Executive 100*, 922 F.2d at 1539 ("Local legislators are entitled to legislative immunity in this Circuit."). Accordingly, this court has decided that "the absolute immunity inquiry" is determining whether the local legislators were engaging in legislative activity in the particular case under consideration. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *accord Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir.1987).

Absolute legislative immunity "extends only to actions taken within the sphere of legitimate legislative activity." *Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir.1989). This court has recognized that "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto College, Inc. v. Line*, 888 F.2d 755, 765 (11th Cir.1989), *cert. denied*, 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990); *see Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n. 20 (11th Cir.1989) ("Extrapolating from Supreme Court and former Fifth Circuit precedent, the Eleventh Circuit has concluded that 'the vote of a city councilman constitutes an exercise of legislative decision-making,' which entitles such city council member to absolute immunity since voting is a legislative function." (quoting *Espanola Way*, 690 F.2d at 829)); *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir.1992) (distinguishing legislators' conduct requiring legislative immunity from actions that are not protected). Additionally, a legislative act is characterized by having a policymaking function and general application. *Crymes*, 923 F.2d at 1485.

▪ "The regulation of land use is traditionally a function performed by local governments." *Lake Country*, 440 U.S. at

**14.** The Court has recognized that seven Courts of Appeals have held that local legislators are entitled to absolute immunity. *Spallone v. United States*, 487 U.S. 1251, 1259, 109 S.Ct. 14, 19, 101 L.Ed.2d 964 (1988).

402, 99 S.Ct. at 1177; *see Grant v. County of Seminole*, 817 F.2d 731, 736 (11th Cir. 1987) (per curiam) (" 'Zoning provides one of the firmest and most basic of the rights of local control.' " (quoting *Stansberry v. Holmes*, 613 F.2d 1285, 1288 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980))). Zoning and land use decisions by local government officials normally are characterized as a legislative function. *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir.1989); *see Crymes*, 923 F.2d at 1485 ("It is clear that if the Commissioners were performing a legislative function in voting to deny ... a development permit, they would be entitled to absolute immunity from suit."); *Hernandez*, 643 F.2d at 1193 ("[L]ocal legislators [voting on a zoning ordinance] are entitled to absolute immunity from federal damage claims for conduct while acting in a legislative capacity...."). By enacting the subject resolution placing a temporary moratorium of general application on issuing mobile home permits for a specified area of Crawford County until a revised zoning development plan could be reviewed, the individual county commissioners were performing a traditional legislative function. Even if Brown could prove conspiracy or bad faith, an unworthy purpose does not preclude absolute immunity to legislators acting in their legislative capacity.[15] *Ten-*

ney, 341 U.S. at 377, 71 S.Ct. at 788; *see Wood v. Strickland*, 420 U.S. 308, 317, 95 S.Ct. 992, 998, 43 L.Ed.2d 214 (1975) (Historically, legislative immunity has been "absolute and consequently d[oes] not depend upon the motivations of the legislators."). Therefore, defendants-appellants are entitled to absolute legislative immunity.[16]

## IV. CONCLUSION

Determining absolute immunity is purely a legal decision for the court; there is no triable issue for a jury with respect to the defendants-appellants in their individual and official capacities.[17] *See Marx*, 855 F.2d at 788–89. "[I]ndividual defendants have absolute immunity from *any* federal suit for damages if their challenged conduct furthers legislative duties." *Baytree*, 873 F.2d at 1409 (emphasis added). Accepting the complaint facts as true, no set of circumstances exists under which Brown could recover against defendants-appellants because of their obvious absolute legislative immunity. Voting to establish the temporary moratorium was prudent to allow time to review the commissioned development plan. Additionally, performing the commissioners' elected responsibilities included responding to the concerns of the county citizens. The facts show nothing

---

**15.** It is precisely the historical *absoluteness* of legislative immunity, despite the legislators' motivations, that precludes this action against defendants-appellants in their individual or personal capacities. *See Hafer*, — U.S. at —, 112 S.Ct. at 363 ("[I]mmunity from suit under § 1983 is 'predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it'...." (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976))); *Harlow*, 457 U.S. at 810–11, 102 S.Ct. at 2734 ("We have recognized that the judicial, prosecutorial, and legislative functions *require* absolute immunity." (emphasis added)). In contrast to legislators engaging in their legislative responsibilities, the Court has clarified that "our cases do not extend absolute immunity to *all* officers who engage in necessary official acts." *Hafer*, — U.S. at —, 112 S.Ct. at 363 (emphasis added). In *Hafer*, the Court distinguished "executive officials [,who] are not entitled to absolute immunity for their official actions." — U.S. at —, 112 S.Ct. at 364.

**16.** Because we have determined that defendants-appellants are entitled to absolute immunity, we need not address Brown's constitutional contentions.

**17.** Although Crawford County did not participate in this appeal, the district court should dismiss the case against this remaining defendant on remand. At this time, Brown has no cause of action against Crawford County except through the alleged discriminatory action of defendants-appellants as county commissioners voting to impose the subject temporary moratorium on mobile home permits. *See Spallone*, 493 U.S. at 269, 110 S.Ct. at 629 ("The city, for all practical purposes, therefore, acts through the city council when it comes to the enactment of legislation."). Until a new Crawford County zoning plan has been finalized and adopted, Brown's constitutional arguments are not ripe. *See infra* note 3.

more than the conscientious effort of the county commissioners to investigate a potential county zoning problem requested by petition of a significant number of Crawford County residents.

Because the individual defendants-appellants clearly were entitled to absolute immunity as a matter of law, the district court's denial of their motion to dismiss is REVERSED, and the case is REMANDED with instructions to grant the motion to dismiss as well as to eliminate the local "procedure" of obtaining permission from the district court to file a motion for summary judgment in the Middle District of Georgia.

