**MULLIS TREE SERVICE, INC., et al., Plaintiffs,**

v.

**BIBB COUNTY, GEORGIA, et al., Defendants.**

Civ. A. No. 91–401–3–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

May 19, 1993.

William E. Hicks, Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for plaintiff Mullis Tree Service, Inc.

Virgil Louis Adams, Macon, GA, Charles A. Mathis, Jr., Donald James Jordan, Milledgeville, GA, for defendants Bibb County, GA, Bibb County Bd. of Comr's, Larry Gene Justice, Albert Billingslea, William P. Randall, Earl Zimmerman, Jr. and Joe Oscar Allen.

## ORDER

OWENS, Chief Judge.

In this case, plaintiffs are challenging the constitutionality of certain ordinances that regulate the handling and disposal of solid waste in Bibb County, Georgia. These ordinances apply to the disposal of putrescible waste (*i.e.*, household garbage) and to the transport of imported waste for disposal in Bibb County.

Both sides have filed cross-motions for summary judgment, and the court heard oral argument on these motions on February 11, 1993. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

On November 20, 1986, plaintiff Mullis Tree Service, Inc., ("MTS") obtained a solid waste handling permit from the Environmental Protection Division ("EPD") of the Georgia Department of Natural Resources for a landfill in Bibb County. Under this permit, the MTS landfill was authorized to accept only nonputrescible waste (non-hazardous, dry solid waste) for disposal.[1]

MTS is currently permitted as a construction/demolition landfill, a type of landfill which can receive nonputrescible waste only. However, MTS has received special authorization from the EPD to accept other types of wastes, some of which are putrescible wastes.

Plaintiff Landfills, Inc., ("Landfills") operates the MTS landfill through various contracts with MTS and plaintiff Robert T. Mullis. Plaintiff Robert T. Mullis owns the real property upon which the landfill is located. He is the president and sole shareholder of plaintiffs MTS and Landfills. Since Landfills started operating the MTS landfill, Landfills has paid an annual $1000 fee to Bibb County for a business license to operate the landfill. The MTS landfill is worth approximately $8 million.

In addition to the MTS landfill, there are three other landfills currently operating in Bibb County: the Macon Kraft landfill, the Armstrong Cork landfill, and the City of Macon landfill. The Macon Kraft and Armstrong Cork landfills are used solely for disposal of their operators' industrial waste, and the City of Macon landfill is used for disposal of putrescible and nonputrescible waste generated within the City of Macon. None of the operators of these three landfills have an interest in importing waste into Bibb County for disposal.

On November 2, 1989, MTS applied to the EPD for a modification of its solid waste handling permit to authorize the MTS landfill to convert to a sanitary landfill facility. This conversion would allow the MTS landfill to accept both putrescible and nonputrescible wastes for disposal. According to plaintiffs, if the MTS landfill were to be converted to a sanitary landfill, it would then be worth over $24 million. The EPD has yet to determine site suitability for the conversion.

On July 17, 1991, Landfills, Inc. filed a request with the Macon–Bibb County Planning and Zoning Commission ("P & Z

---

1. One of the conditions of the MTS permit is that "No hazardous or putrescible waste shall be deposited at the landfill."

Comm'n") for a conditional use permit to allow for the disposal of putrescible waste in the existing landfill. Several members of the Bibb County Board of Commissioners ("Board") opposed the permit and attempted to convince the P & Z Comm'n to deny it. Nonetheless, the P & Z Comm'n granted the conditional use permit on November 25, 1991.

Shortly before the conditional use permit was granted by the P & Z Comm'n, three ordinances that regulated the transport and disposal of solid waste in Bibb County were proposed to the Board. On November 21, 1991, the Board held a special meeting to seek advice from its attorney concerning the legal ramifications of these proposed ordinances. Notice of this meeting was posted and given to the media at least 24 hours prior to the meeting. However, after the meeting began, the Board voted to close the meeting so that it could confidentially seek advice from legal counsel.

Drafts of the proposed ordinances were made available to the public on November 22, 1991, and notice was posted and given to the media of a special meeting to be held on November 25, 1991, for the purpose of considering the ordinances. Plaintiff Mullis and plaintiffs' counsel were given opportunity to address the Board prior to the vote. The ordinances were adopted by a vote of 4—1.

The first ordinance adopted by the Board amends paragraph (7) of § 15–15006 of the Bibb County Code and adds two new paragraphs to § 15–15006, paragraphs (7.1) and (7.2). This ordinance regulates the disposal of dry solid waste and putrescible waste in Bibb County and the transport of imported waste into Bibb County for disposal. The third ordinance amends Exhibit "A" to § 15–15004 and sets the rates of fees for the licenses required for the various types of solid waste transport and disposal. The second ordinance passed by the Board on November 25, 1991, regulates biomedical waste and is not at issue in this suit.[2]

Plaintiff MTS filed this suit on November 26, 1991, and plaintiffs Mullis and Landfills

were subsequently added by an amended complaint. Bibb County has agreed not to enforce the challenged ordinances until a decision concerning their validity has been rendered by this court.

In their complaint, plaintiffs contend that certain provisions of the Bibb County Code, specifically § 15–15006, paragraph (7.1) and (7.2), and Exhibit "A" to § 15–15004, which regulate the disposal of putrescible waste and the transport of imported waste, are unconstitutional burdens on interstate commerce. Plaintiffs also contend that these provisions violate their due process rights.

Plaintiffs have brought this action under 42 U.S.C. § 1983, and they seek declaratory relief invalidating these Code sections and permanent injunctive relief enjoining defendants from enforcing them. Plaintiffs also seek compensatory damages and attorney fees. They seek summary judgment on their claims that the ordinances constitute an unconstitutional burden on interstate commerce in violation of the Dormant Commerce Clause.

Defendants have filed a cross-motion for summary judgment and seek a judgment upholding the constitutionality of the Code provisions in dispute and a finding that plaintiffs' due process rights were not violated. They also challenge plaintiffs' standing in this case and contend that all individual defendants are entitled to absolute and qualified immunity on plaintiffs' claims for damages.

## DISCUSSION

Under the waste regulations adopted by defendants on November 25, 1991, there are four classifications of waste: dry solid waste, putrescible waste, imported waste, and biomedical waste. As the court has previously stated, only the regulations applying to putrescible waste and imported waste are being challenged in this suit.

---

**2.** The second ordinance passed by the Board on November 25, 1991, adds paragraph (7.3) to § 15–15006. (7.3) regulates the incineration and disposal of biomedical waste and is not at issue in this suit. In addition, certain provisions of (7.2) regulate the importation of biomedical waste into Bibb County. These provisions are not at issue in this suit as well.

## I. THE ORDINANCES

### A. Dry Solid Waste

Section 15–15006, paragraph (7) ("(7)") regulates "Landfills for deposit of dry solid waste." Dry solid waste consists of all solid waste, as defined in O.C.G.A. § 12–8–22(33),[3] except for putrescible waste[4] and biomedical waste.[5] As a nonputrescible landfill, the MTS landfill is currently subject to these regulations.

Under (7), one must obtain a business license in order to operate a dry solid waste landfill in Bibb County. The fee for this license is $1000 per year. Before one can obtain a license to operate a dry solid waste landfill, one must comply with the following requirements:

1. Obtain zoning approval from the P & Z Comm'n.

2. Possess valid federal and state permits.

3. Comply with all permits and state and federal regulations.

4. Operate landfill such that it does not constitute a nuisance.

5. Allow disposal of only authorized materials in landfill and not allow disposal of any hazardous, liquid, or nonsolid waste.

6. Hold a performance bond with security payable to Bibb County in the amount of $75,000 and conditioned upon compliance with all state, federal, and county laws and regulations.

7. Maintain a general public liability policy which will insure in the amount of $1,000,000 for injury to persons and $50,000 for injury to property.

8. Maintain records reflecting the date and hour of deposit of each load of solid waste, the name and address of the owner of the delivery truck, and a general description of the waste.

9. Provide access to landfill for inspection by county engineer at reasonable times.

### B. Putrescible Waste Landfills

Section 15–15006, paragraph (7.1) ("(7.1)") applies to "Landfills for the deposit of putrescible waste." Because the MTS landfill currently disposes of some types of putrescible waste, it will be forced to comply with all regulations under (7.1) if this ordinance is upheld.

Under (7.1), one must obtain a special license in order to operate a putrescible waste landfill in Bibb County. The fee for this license is $5000 per year. To obtain a putrescible waste license, one must not only comply with all requirements for the operation of dry solid waste landfills, but also numerous other requirements.

First, an applicant for this license must submit the following information:

1. The experience of the applicant in operating, maintaining, and closing landfills.

2. Any prior convictions for crimes involving moral turpitude or violations of solid waste disposal regulations.

3. The name, address, and license number of the certified landfill operator to be in charge of daily operations.

---

**3.** "Solid waste" is defined as follows:
[A]ny garbage or refuse; sludge from a wastewater treatment plant, water supply treatment plant, or air pollution control facility; and other discarded material including solid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations and community activities, but does not include recovered materials; solid or dissolved materials in domestic sewage; solid or dissolved materials in irrigation return flows or industrial discharges that are point sources subject to permit under 33 U.S.C. § 1342; or source, special nuclear, or by-product material as defined by the federal Atomic Energy Act of 1954, as amended (68 Stat. 923).

**4.** "Putrescible waste" is defined in paragraph (7.1) of the ordinance as "those wastes which are capable of being quickly decomposed by microorganisms." These wastes include "kitchen wastes, animal manure, offal, hatchery and poultry processing plant wastes and garbage" as well as "those wastes which have the capacity to create noxious odors or to attract flies and other flying insects."

**5.** "Biomedical waste" consists of "pathological waste, biological waste cultures and stocks of infectious agents and associated biologicals, contaminated animal carcasses ..., sharps, chemotherapy waste, discarded medical equipment and parts,.... O.C.G.A. § 12–8–22(1.1); see also Para. (7.3)(B)(3) of § 15–5006 of the Code of Bibb County.

In addition, one must comply with many other regulations that are not required for the operation of dry solid waste landfills:

1. No boundary line of a putrescible waste landfill can be located within one-half mile of a boundary line of property zoned in any classification of residential use.

2. The licensee must post a $1,000,000 performance bond rather than the $75,000 bond required for dry solid waste landfills.

3. The licensee must obtain a general public liability policy which will insure in the amount of $10,000,000 for injury to persons and $5,000,000 for injury to property, rather than the respective $1,000,000 and $50,000 required for dry solid waste landfills.

4. The licensee must install washing equipment to wash down each vehicle that brings putrescible waste to the landfill.

5. The licensee must take reasonable action to prevent scavenging and the harboring and feeding of wild animals at the landfill site.

6. The landfill must be enclosed by an eight-foot chain length fence and all entrances and exits must be monitored by the licensee.

7. The landfill can be open and operated only between 7:00 a.m. and 7:00 p.m.

8. All waste material must be compacted to the least practical volume and covered daily by a layer of clean earth at least one foot in depth.

9. The licensee must police the site and is responsible for the cleanup of any waste dumped within five hundred feet of the landfill premises.

10. The licensee must submit a fire prevention control plan which must be approved by the county engineer.

11. The landfill is subject to inspections by county engineer at any time.

(7.1) expressly excludes from its provisions any landfills owned and operated by the City of Macon that were in operation prior to the adoption of the ordinance. However, any expansion of the City of Macon's landfill operation will be subject to the terms of this paragraph.

If anyone violates a provision in (7.1), he is subject to a fine and/or imprisonment.

### C. Imported Waste

Section 15–15006, paragraph (7.2) ("(7.2)") applies to the "Importation of waste." The term "imported waste" is defined as "any waste generated or collected outside Bibb County, Georgia." (7.2)(b)(2). Under (7.2)(c), any person who desires to "transport, or cause to be transported, pursuant to a contract, whether oral or otherwise, imported waste into the county for the purpose of disposing of such waste" must first obtain a "waste importation permit" from the Board.

In order to obtain a waste importation permit, one must comply with numerous procedures. In addition, because a waste importation permit is valid only for the calendar year in which it is issued and is nonrenewable, one must comply with these application procedures each year to continue transporting imported waste into Bibb County.

First, one must pay a waste importation permit application fee of ten thousand dollars. This fee is in addition to the yearly license fee for a waste importation permit of $5000. *See* Amendment to Exhibit "A" of § 15–15004, Section 3.

Second, the application must contain the following information:

1. The total monthly tonnage of imported waste for which the permit is sought.

2. All counties within which the imported waste will be generated and/or collected;

3. A description of the imported waste;

4. The landfill within which the imported waste will be placed.

5. A description of each vehicle that may be used to transport the imported waste within the county, including the size, weight, load capacity, state of registration, motor vehicle tag number, and owner of each such truck or other motor vehicle;

6. The proposed route(s) by which the imported waste will be transported within the County, and the number of times each such route will be traveled per month by

the vehicles transporting the imported waste;

7. A description of the applicant's motor vehicle liability insurance coverage, including name of insurance company, policy number, kinds of coverage, and policy limit for each kind of coverage. Liability limits for imported waste must be at least $1,000,000 per occurrence for injury to persons.

8. If applicant is a corporation, the state and date of incorporation and the names and addresses of all officers, directors, and registered agent for service of process in Georgia.

9. If applicant is a partnership, the names and addresses of all general partners.

See (7.2)(e)(2)(b)–(j).

The applicant must also attach the following items to its application:

1. Written verification from the EPD that each landfill into which the imported waste is to be placed is in compliance with all conditions of a valid EPD waste handling permit, a design and operation plan approved by EPD, the Georgia Comprehensive Solid Waste Management Act, and all other applicable laws.

2. Written verification from the EPD that the proposed placement of the imported waste into the landfill is within the scope of the landfill operator's EPD waste handling permit.

3. Written verification from the EPD that the applicant has not been found in violation of any Georgia environmental laws and regulations within the past ten years.

4. A sworn statement by the applicant that it has never been convicted of a felony or any misdemeanor involving moral turpitude.

5.. Written verification from the governing authority of the state or county from which the imported waste is collected, that the applicant has obtained permission to transport the imported waste into the County.

See (7.2)(3)(a)–(b), (d)–(f).

After receiving a permit application, the Board must hold a public hearing in which

representatives of the applicant must participate. Then, after obtaining a permit, a waste importation permit holder must file with the county engineer a monthly report containing the following information:

1. The exact dates covered by the report.

2. All counties and states from which the imported waste was collected during the reporting period.

3. The tonnage of imported waste collected from each county or state.

4. The total tonnage of imported waste transported into the county during the reporting period.

See (7.2)(h)(2).

The ordinance also requires a permit holder to pay a fee of seven dollars per ton of imported waste to the County on a monthly basis. See (7.2)(h)(1). However, defendants have conceded that this requirement is an unconstitutional burden on interstate commerce under current case law.

A waste importation permit may be revoked by the Board for any good cause, and such causes include a failure to timely submit a monthly report and the violation of any environmental law. In addition, any person convicted of violating the provisions of paragraphs (7.1) or (7.2) is subject to a fine and/or imprisonment. Finally, if a landfill operator knowingly accepts imported waste from any person not properly permitted, the operator is subject to a fine, imprisonment, and/or revocation of its permit or license.

## II. STANDING

Defendants first contend that some or all of plaintiffs do not have standing to challenge the Bibb County ordinances at issue. While defendants concede that plaintiff Landfills has standing to challenge the waste importation ordinance, they claim that plaintiffs MTS and Mullis do not have standing to challenge this ordinance. In addition, defendants claim that none of the plaintiffs have standing to challenge the putrescible waste ordinance.

In order to establish standing in a commerce clause case, a plaintiff must show that he falls within the "zone of interests" to be protected by the Commerce Clause.

*Clarke·v. Securities Industry Assn.*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). It is well established that regulations of solid waste disposal affect interstate commerce, *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Diamond Waste, Inc. v. Monroe County*, (M.D.Ga.1992). Therefore, plaintiffs fall within the "zone of interests" to be protected by the Commerce Clause.

In addition, a plaintiff must meet basic standing requirements by showing that he has suffered an injury in fact which was caused by the challenged activity and can be redressed by the court. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990). In this case, there is no dispute that the court can redress any injury caused by the regulations at issue by declaring them unconstitutional.

However, defendants contend that no plaintiff can show that he will suffer actual injury if the putrescible waste ordinance is enforced. They also contend that only Landfills can show that it will suffer actual injury if the waste importation ordinance is enforced.

### A. Putrescible Waste Ordinance

■ Defendants contend that none of the plaintiffs have standing to challenge the putrescible waste ordinance. They base this argument upon the fact that the MTS landfill is permitted by the state as a nonputrescible waste landfill rather than a putrescible waste landfill. Therefore, defendants argue, the putrescible waste ordinance has no effect on current waste disposal operations at the MTS landfill, and plaintiffs have no standing to challenge it.

The court is unpersuaded by defendants' argument. Due to a change in state law, the MTS landfill is currently permitted as a construction/demolition landfill rather than a nonputrescible waste landfill. Although this permit does not allow for disposal of putrescible wastes in the MTS landfill, MTS has obtained special authorization from the state to accept various other types of waste as well. According to unrefuted affidavits submitted by plaintiffs, some of this waste is "putrescible waste" as defined by the Bibb County ordinance.

Therefore, defendants' argument that the ordinance has no effect on current operations at the MTS landfill has no merit. Landfills, as the operator of a landfill that accepts some types of putrescible waste and is located in Bibb County, would have to comply with the putrescible waste ordinance requirements in order to maintain current operations and, consequently, has standing to challenge the ordinance.

In addition, although the exact nature of the relationship between Mullis, MTS, and Landfills is unclear, there is no dispute that Mullis and MTS contract with Landfills for the operation of the MTS landfill. Since the putrescible waste ordinance affects Landfills' ability to perform its contracts with Mullis and MTS, they are directly injured by the ordinance as well.

The court also notes that MTS plans to expand the current MTS landfill and has applied for modification of its EPD permit to convert the expanded portion into a sanitary landfill facility. This modification would increase the value of the MTS landfill from $8 million to over $24 million. The putrescible waste ordinance undisputedly prevents any such conversion from taking place.

For these reasons, Mullis, MTS, and Landfills have standing to challenge the putrescible waste ordinance.

### B. Waste Importation Ordinance

■ Defendants also contend that only Landfills has standing to challenge the waste importation ordinance. They base this argument upon the fact that Landfills is the only plaintiff that operates a landfill in Bibb County. Because MTS and Mullis do not operate landfills in Bibb County, defendants contend that they have no standing to challenge this ordinance.

The court is unpersuaded by defendants' argument. It is clear that the waste importation ordinance, if constitutionally valid, will have a huge impact upon waste disposal at the MTS landfill. This ordinance requires every MTS customer who brings out-of-county waste to the MTS landfill for disposal to

obtain a very expensive waste importation permit and to comply with numerous other requirements. There is no doubt that few, if any, customers will agree to these extensive requirements and, consequently, MTS will lose a tremendous amount of business.

This loss of business will clearly affect plaintiffs MTS and Mullis. MTS will lose customers with whom it currently contracts for waste disposal. Mullis, as owner of the property upon which the landfill is located, will be injured by the decrease in value of his property. Economic injury is sufficient to establish standing. *Government Suppliers Consolidating Services, Inc. v. Bayh*, 753 F.Supp. 739, 759 (S.D.Ind.1990) (citing *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 267, 104 S.Ct. 3049, 3053, 82 L.Ed.2d 200 (1984)). Thus, MTS, Mullis, and Landfills have standing to challenge the waste importation ordinance.

### III. PUTRESCIBLE WASTE ORDINANCE

Paragraph (7.1) of § 15–5006 of the Bibb County Code places new regulations upon the operator of a landfill that is located within Bibb County and that accepts putrescible waste for disposal. These regulations do not apply to operators of landfills that only accept nonputrescible waste for disposal. Prior to the adoption of this paragraph, putrescible waste landfills in Bibb County were not regulated any differently from nonputrescible waste landfills.

Plaintiffs contend that these regulations place an unconstitutional burden on interstate commerce and are therefore invalid. Defendants, in contrast, contend that interstate commerce is unaffected by this regulation and, therefore, no commerce clause violation has occurred.

Plaintiffs also contend that the one-half mile buffer requirement on putrescible waste landfills violates state law. They claim that this requirement is really a zoning regulation and, because the Board has no zoning authority, its adoption was an ultra vires act in violation of state law. Defendants contend that the buffer requirement is not a zoning regulation.

Because federal courts should avoid addressing constitutional questions when an issue can be resolved on state grounds, *Schmidt v. Oakland Unified School District*, 457 U.S. 594, 595, 102 S.Ct. 2612, 2612, 73 L.Ed.2d 245 (1982), the court will first address plaintiffs' claim under state law.

### A. One–Half Mile Buffer Requirement

■ It is undisputed that the Board has no authority to enact zoning regulations in Bibb County. This authority belongs exclusively to the P & Z Comm'n, which was established pursuant to a local amendment to the Georgia Constitution by a joint resolution between the governing authorities of the City of Macon and Bibb County. Ga.Laws 1947, p. 1240; Macon City Code § 11–1001; Code of Bibb County § 11–3001; *see also Martin Marietta Corp. v. Macon–Bibb County Planning & Zoning Com.*, 235 Ga. 689, 221 S.E.2d 401 (1975). Thus, the question before the court is whether the one-half mile buffer requirement is a zoning regulation.

No Georgia court has addressed the question of whether the creation of a buffer requirement is an exercise of zoning authority. Thus, this court must turn to the Georgia Code and decisions of other courts in analyzing this issue.

Under Georgia law, a "zoning ordinance" is "an ordinance or resolution of a local government establishing procedures and zones or districts within its respective territorial boundaries which regulate the uses and development standards of property within such zones or districts." O.C.G.A. § 36–66–3(5). Furthermore, the term "zoning" is defined as follows:

[T]he power of local governments to provide within their respective territorial boundaries for the zoning or districting of property for various uses and the prohibition of other or different uses within such zones or districts and for the regulation of development and the improvement of real estate within such zones or districts in accordance with the uses of property for which such zones or districts were established.

O.C.G.A. § 36–66–3(3). Therefore, if the buffer regulation has the effect of establishing zones of property in Bibb County in which various uses are permitted and prohibited, then it is a zoning ordinance.

The buffer regulation states as follows:
No landfill accepting and disposing of putrescible waste shall be located within one-half mile of any residential zoned area as established by the "Comprehensive Land Development Resolution for the City of Macon and Bibb County, Georgia," as amended. The one-half-mile distance established by this subparagraph shall mean that no boundary line of the property or area permitted by federal or state authorities for use as a landfill authorized to accept putrescible waste shall be closer than one-half mile to any boundary line of property zoned in any classification of residential use.

(7.1)(a).

The court finds that this regulation does have the effect of establishing property zones in which certain uses are permitted and certain uses are prohibited in Bibb County. Under this regulation, each area zoned for residential use is surrounded by a buffer zone, in which the use of property as a putrescible waste landfill is prohibited. Such use is permitted only in those areas in between each buffer zone.

**6.** The court notes that defendants contend that the buffer requirement is not an exercise of zoning power under Georgia law. They base this argument upon an analogy to certain buffer-type regulations in the Georgia Waste Management Act.

It is well established that the Georgia Legislature, like the Board in this case, does not have zoning power. *Warshaw v. City of Atlanta*, 250 Ga. 535, 536–37, 299 S.E.2d 552 (1983). However, the Legislature has passed laws that impose certain buffer-type requirements on solid waste facilities in Georgia.

Under the Waste Management Act, a solid waste handling facility must meet certain siting criteria in order to obtain a state permit. For example, no solid waste handling facility can be located within one-half mile of an adjoining county, unless the governing authority of the adjoining county gives its express approval. O.C.G.A. § 12–8–25. Another "buffer" requirement prohibits the location of a solid waste handling facility within 5,708 yards (3.2 miles) of a National Historic Site. O.C.G.A. § 12–8–25.1.

Hence, the one-half mile buffer requirement for putrescible waste landfills is actually a zoning ordinance,[6] and the Board's adoption of this regulation was an ultra vires act. Therefore, this regulation is invalid under state law. *See Triple G. Landfills, Inc. v. Board of Commissioners*, 977 F.2d 287 (7th Cir.1992) (where county ordinance imposed landfill siting standards far more stringent than those required by state, ordinance was zoning regulation and, in absence of comprehensive zoning plan in county, was invalid under Indiana law).

### B. Other Regulations

■ Plaintiffs do not challenge the remaining regulations applying to putrescible waste disposal in Bibb County under state law. However, plaintiffs contend that these regulations impose an undue burden on interstate commerce.

Under (7.1), putrescible waste disposal is regulated in the same manner regardless of the source of the waste. Thus, the appropriate test to apply to these regulations is the test set forth by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless

Thus, according to defendants, because the passage of these buffer-type requirements was not an exercise of zoning power by the Legislature, the adoption of the buffer requirement in this case was not an exercise of zoning power by the Board.

The court finds that this argument has no merit for two reasons. First, the question of whether the buffer requirements under the Waste Management Act are really zoning regulations is not before this court. Such analysis is irrelevant to this litigation. In addition, the examples cited by defendants are not analogous to the Bibb County buffer requirement. Under both state requirements, an applicant can still obtain a state permit if no alternative sites or methods for waste disposal are available in that jurisdiction. Furthermore, the Bibb County requirement is much more extensive than the state requirements. Therefore, the court is unpersuaded by defendants' argument.

the burden imposed on such commerce is clearly excessive in relation to the putative local benefits ... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

After examining the materials submitted by the parties in support of their respective motions, the court has determined that there are factual issues pertaining to the benefits and burdens resulting from enforcement of the putrescible waste ordinance that still need to be resolved in this case. Therefore, the court is unable to determine the constitutionality of this ordinance based upon the parties' cross-motions for summary judgment. Accordingly, the parties' cross-motions for summary judgment pertaining to the constitutionality of the putrescible waste ordinance are **DENIED**.

## IV. WASTE IMPORTATION ORDINANCE

Section 15–15006, paragraph (7.2) of the Bibb County Code regulates the importation of waste into Bibb County for disposal in Bibb County. Plaintiffs contend that this paragraph, except to the extent that it regulates imported biomedical waste, is unconstitutional under the dormant Commerce Clause.

Defendants concede that the fee requirements under (7.2)(h)(2) are invalid. Section (h)(2) requires waste transporters to pay seven dollars per ton of imported waste to Bibb County. In addition, each waste transporter must pay an annual fee for a waste importation permit. This fee is currently set at $5000 under the ordinance. However, defendants contend that all other requirements under (7.2) are constitutionally valid.

■ The Supreme Court recently held in *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Department of Natural Resources,* —— U.S. ——, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992), that county ordinances which discriminate against out-of-county waste are subject to strict scrutiny under the Commerce Clause. In order for a county to justify its discrimination against out-of-county waste, it must establish a reason, apart from origin, for treating out-of-county waste differently from in-county waste. *Id.* at ——, 112 S.Ct. at 2024.

■ In the case at bar, the waste importation ordinance discriminates against out-of-county waste on its face. It places numerous requirements upon persons who wish to transport solid waste into Bibb County for disposal, and there are no such requirements on persons transporting waste generated within Bibb County.

As the county has offered no basis, apart from origin, for treating out-of-county waste differently from in-county waste, this court is compelled to declare (7.2), except to the extent that it regulates biomedical waste, constitutionally invalid. *See BFI Medical Waste Systems v. Whatcom County,* 983 F.2d 911 (9th Cir.1992); *In re Southeast Arkansas Landfill, Inc.,* 981 F.2d 372 (8th Cir.1992).

Accordingly, plaintiff's motion for summary judgment is **GRANTED** such that § 15–15006, paragraph (7.2), to the extent that it regulates the importation of solid waste rather than biomedical waste, and section (3) of Exhibit "A" to § 15–15004 are declared unconstitutional under the Commerce Clause. In addition, defendants' cross-motion on this issue is **DENIED**.

## V. DUE PROCESS

In their motion for summary judgment, defendants contend that they are entitled to judgment as a matter of law on all of plaintiffs' due process claims. Plaintiffs have not responded to defendants' contentions. Because the court has already determined that the waste importation ordinance is unconstitutional, it is only necessary to address plaintiffs' due process claims that are related to the putrescible waste ordinance.

The court agrees that no procedural due process violation occurred. Plaintiffs had sufficient notice and opportunity to be heard before the adoption of these ordinances.

However, the court requires more facts before it is able to rule upon plaintiffs' sub-

stantive due process claims. These claims will be addressed when the court hears evidence on plaintiffs' commerce clause claims concerning the putrescible waste ordinance.

Accordingly, defendants' motion for summary judgment is **GRANTED** on plaintiffs' procedural due process claims and **DENIED** on plaintiffs' substantive due process claims.

## VI. IMMUNITY

■ The Board of Commissioners and the individual Board members contend that they have absolute legislative immunity against plaintiffs' claims for damages in this case. It is well established that " '[I]ndividual defendants have absolute immunity from any federal suit for damages if their challenged conduct furthers legislative duties.' " *Brown v. Crawford County*, 960 F.2d 1002, 1012 (11th Cir.1992) (quoting *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir.1989)). Furthermore, absolute immunity applies to state and local legislators, *id.* 960 F.2d at 1011–12; and it is not precluded by a showing of conspiracy or bad faith. *Id.* at 1012.

■ In this case, all of plaintiffs' claims are based upon defendants' enactment of two local ordinances. There are no challenges to any conduct by defendants that does not relate to the enactment of these ordinances. Thus, it is clear that the " 'challenged conduct further[ed] legislative duties.' " *Id.* at 1012. Therefore, these defendants are entitled to absolute legislative immunity against plaintiffs' claims for damages against them.

Accordingly, defendants' motion for summary judgment on all liability claims against the defendant Board and the individual defendants is **GRANTED.**

## CONCLUSION

In summary, the parties' cross-motions for summary judgment are **GRANTED IN PART AND DENIED IN PART.** First, plaintiffs' motion is **GRANTED** such that the following provisions of the Bibb County Code are **DECLARED** unconstitutional: § 15–15006, paragraph (7.2), to the extent that it regulates the importation of solid waste into Bibb County, and § 15–15004, Exhibit "A",

to the extent that it requires a $5000 fee for a waste importation permit. Bibb County is **ENJOINED** from all future enforcement of these provisions. Defendants' motion is **DENIED** on this issue.

Second, plaintiffs' motion for summary judgment challenging the one-half mile buffer requirement for putrescible waste landfills in § 15–15006, paragraph (7.1), under state law is **GRANTED.** This provision is a zoning regulation enacted by an entity without zoning authority and is therefore invalid. Defendants are **ENJOINED** from all future enforcement of this provision, and their motion on this issue is **DENIED.**

Third, the parties' cross-motions for summary judgment are **DENIED** on the question of whether the other putrescible waste regulations in § 15–15006, paragraph (7.1) are constitutional. As discussed above, the court is unable to resolve this question due to an incomplete record.

Fourth, defendants' motion for summary judgment on plaintiffs' procedural due process claims is **GRANTED.** No procedural due process violation occurred in this case.

Fifth, defendants' motion for summary judgment on plaintiffs' substantive due process claims is **DENIED.** As discussed above, the court requires more facts before it can address these claims.

Sixth, defendants' motion for summary judgment on plaintiffs' claims for damages against the Board and the individual Commissioners is **GRANTED.** These defendants are entitled to absolute legislative immunity.

Finally, the court **FINDS** that this order has no effect upon any of the provisions of the challenged ordinances that regulate the importation and disposal of biomedical waste in Bibb County. This issue was not before the court in this case.

**SO ORDERED.**