71 F.3d 1197
 FORT GRATIOT SANITARY LANDFILL, INC., Plaintiff-Appellant,
v.
MICHIGAN DEPARTMENT OF NATURAL RESOURCES; David Hales; St.
Clair County; St. Clair County Health Department; Jon B.
Parsons; St. Clair County Metropolitan Planning Commission;
Gordon Ruttan; St. Clair County Solid Waste Planning
Committee; and Peg Clute, Defendants-Appellees.
 No. 94-1608.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Oct. 16, 1995.
Decided Dec. 20, 1995.
 
 Robert A. Fineman (briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Fort Gratiot Sanitary Landfill, Inc.
 Leo H. Friedman, Office of Atty. Gen., James E. Riley (briefed), Office of Atty. Gen., Natural Resources Div., Thomas J. Emery, Office of Atty. Gen., Michigan Liquor Control Com'n, Lansing, MI, for Michigan Dept. of Natural Resources.
 Leo H. Friedman, Office of Atty. Gen., James E. Riley (briefed), Office of Atty. Gen., Natural Resources Div., Lansing, MI, for David Hales.
 Elwood L. Brown, County of St. Clair Prosecutor's Office, Port Huron, MI, Keith D. Zick, Zick & Swegles, Marysville, MI, for St. Clair County Health Dept., St. Clair County Metropolitan Planning Com'n and St. Clair County Solid Waste Planning Committee.
 Lawrence R. Ternan (briefed), Margaret B. Kiernan, Beier & Howlett, Bloomfield Hills, MI, Elwood L. Brown, County of St. Clair Prosecutor's Office, Port Huron, MI, Keith D. Zick, Zick & Swegles, Marysville, MI, for John B. Parsons, Gordon Ruttan and Peg Clute.
 Before: BROWN, BOGGS, and NORRIS, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 Fort Gratiot Sanitary Landfill, Inc. ("Fort Gratiot") appeals from the district court's determination that this court's mandate, entered on remand after the Supreme Court's decision in Fort Gratiot Sanitary Landfill, Inc. v. Michigan Department of Natural Resources, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992), constituted a final judgment in favor of Fort Gratiot and terminated the case. The district court denied, based on that determination, Fort Gratiot's motion for entry of an order, based on the Supreme Court's ruling, granting it partial summary judgment. The district court also denied Fort Gratiot's motion for leave to amend its complaint with a claim for money damages. For the reasons stated below, we REVERSE and REMAND.
 
 I. FACTS AND BACKGROUND
 A. THE ORIGINAL CASE
 
 2
 This case arises from a dispute about the acceptance of out-of-state waste, in violation of a Michigan statute, at Fort Gratiot's landfill in St. Clair County, Michigan. After a Michigan court preliminarily enjoined the landfill's acceptance of out-of-state waste, Fort Gratiot sued in 1989 for declaratory and injunctive relief in the United States District Court for the Eastern District of Michigan.
 
 
 3
 Fort Gratiot sought two things in its complaint. First was an order declaring two 1988 amendments to the Michigan Solid Waste Management Act ("the Amendments") facially unconstitutional under the Commerce Clause, U.S. Const. art. I, Sec. 8, cl. 3, insofar as they prohibited the disposal of out-of-state waste.[1] Second was a permanent injunction against enforcement of the statutes in a manner preventing disposal of out-of-state waste. The complaint did not attack the Amendments' regulation of waste generated within Michigan that was shipped to a different county within the state (hereinafter referred to as intrastate, intercounty waste). After the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted, Fort Gratiot moved for summary judgment.
 
 
 4
 Before 1988, Michigan did not prohibit the acceptance or disposal of out-of-state waste, and its regulation of intrastate waste was a simple requirement that both importing and exporting counties be identified in each other's solid waste management plans. That changed in 1988 with the Amendments, also known as the "Waste Import Restrictions," which banned the disposal of waste from any other county inside, or any source outside, Michigan, unless the receiving county "explicitly authorized" such activity in its solid waste management plan. See Fort Gratiot Sanitary Landfill, Inc., 504 U.S. at 356-57, 112 S.Ct. at 2022 (discussing the pertinent statutes).
 
 
 5
 In 1990, the district court found the Amendments constitutional and dismissed Fort Gratiot's complaint, and this court affirmed approximately one year later. Bill Kettlewell Excavating, Inc. v. Michigan Dep't of Natural Resources, 931 F.2d 413, 418 (6th Cir.1991). On June 1, 1992, the Supreme Court reversed this court and ruled for Fort Gratiot, holding the Amendments unconstitutional violations of the Commerce Clause. Fort Gratiot Sanitary Landfill, Inc., 504 U.S. 353, 355, 112 S.Ct. 2019, 2021-22, 119 L.Ed.2d 139 (1992).[2]
 
 
 6
 The Court first noted that Michigan's program of regulating solid waste disposal prior to the 1988 amendments was "not challenged." Id. at 358, 112 S.Ct. at 2023. The Court then "assume[d] that all of the provisions of [the Act] prior to the 1988 amendments adding the Waste Import Restrictions could fairly be characterized as health and safety regulations with no protectionist purpose." Id. at 366, 112 S.Ct. at 2027. As for the Amendments, however, the Court held that they "unambiguously discriminate against interstate commerce and are appropriately characterized as protectionist measures that cannot withstand scrutiny under the Commerce Clause." Id. at 367-68, 112 S.Ct. at 2028. That opinion, and the Court's judgment, constituted the mandate of the Supreme Court under the Court's Rule 45.3.
 
 
 7
 This court, in turn, issued an order on August 7, 1992. That order read, in its entirety, "This matter is before the court in light of the Supreme Court's recent opinion and judgment in this case. Upon consideration, it is ORDERED that the district court's decision is REVERSED and the plaintiff is granted costs pursuant to the Supreme Court's ruling." After twenty-one days, this became the mandate of this court and returned jurisdiction to the district court. See Fed.R.App.P. 40(a); id. 41(a). We did not, unfortunately, return the record to the district court with this order. Indeed, we did not do so until June 8, 1993.
 
 
 8
 On November 8, 1993, we reissued the order with a notation that we did so "as mandate." That document specifically directed (with a handwritten notation) the payment of costs to Fort Gratiot. This action was, at last, in full accordance with both Federal Rule of Appellate Procedure 41(a), which directs us to issue mandates, and Sixth Circuit Internal Operating Procedure 23.1, which states that we return the record to the district court when we issue our mandates. This is also the customary practice for handling a case when the Supreme Court reverses and remands the case to us. See 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure Sec. 3987 (Supp.1995) (explaining appellate court procedures for issuing mandates and processing cases after Supreme Court disposition).[3]
 
 B. THE DENNIS CASE
 
 9
 Meanwhile, as Fort Gratiot's case ascended the appellate ladder, the Supreme Court decided Dennis v. Higgins, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), which held that a party may bring a suit for money damages under 42 U.S.C. Sec. 1983 for a Commerce Clause violation. Dennis resolved a split of authority among the circuits. Three circuits had specifically held such claims invalid,[4] while three, including this circuit, had let such claims proceed.[5] Since the Court's Fort Gratiot decision, three federal courts have allowed section 1983 claims while upholding Commerce Clause challenges to out-of-county waste regulations similar to the Waste Import Restrictions.[6]
 
 C. THE CURRENT CASE
 
 10
 On February 10, 1994, Fort Gratiot moved (1) for leave to amend its complaint with a section 1983 damages claim, and (2) for entry of an order granting it partial summary judgment on its complaint. The record reflects that Fort Gratiot contemplated making those motions at the time we issued our first order on remand in August of 1992, and that Fort Gratiot wrote the defendants, in September of 1993, advising them of an intent to file a section 1983 claim. Nevertheless, Fort Gratiot did not act until February of 1994, and it attributed its delay of almost two years from its Supreme Court victory (and of almost three years from the Dennis decision) to district court confusion about which judge would take the case on remand.
 
 
 11
 Senior District Judge James Harvey, who originally dismissed the case, had been replaced on the bench in June of 1990 by District Judge Robert Cleland, who recused himself because he had initially served as counsel of record for defendant St. Clair County. Counsel for Fort Gratiot claims that he contacted the district court clerk's office twice in an effort to resolve the matter. On the first contact, counsel claims the office told him that the court would designate a new judge to replace Judge Cleland, and that the court would notify the parties accordingly. On the second try, counsel said, the office told him the case was closed.
 
 
 12
 Eventually, one month after this court reissued its order and denoted it a "mandate" on November 8, 1993, the district court notified the parties that it had set the case for a scheduling conference before Judge Nancy Edmunds. This prompted Fort Gratiot's motions for leave to amend by adding a damages claim under section 1983, and for partial summary judgment based on the Supreme Court's decision. Judge Edmunds heard oral argument on both motions on April 22, 1994.
 
 
 13
 The district court denied both motions in an order dated May 2, 1994. First, the court denied the motion for leave to amend with a damages claim under section 1983 because of untimeliness. Fort Gratiot, according to the court, could and should have brought its section 1983 damages claim in its initial complaint, regardless of the state of the law at that time. Alternatively, the district court stated, Fort Gratiot should have moved more quickly to have the case reassigned after Judge Cleland recused himself. Finally, the lengthy delay had, in the court's opinion, prejudiced the defendants unfairly.
 
 
 14
 Second, although it had entertained and then denied the motion to amend in its order, the district court, in the same order, deemed the case to have been closed by this court's order of August 7, 1992. Despite having said at oral argument that "the reversal of [the district court's dismissal] means that the complaint is viable and that some sort of judgment needs to be entered on that original complaint," the court, nevertheless, stated in its order:
 
 
 15
 [I]t is clear from a thorough reading of the Sixth Circuit's August 7, [1992] order that the case was closed at that time.... The Sixth Circuit's November , 1993 order merely re-issued its mandate and again stated that the Supreme Court had rendered a judgment in this action. At that point the case was closed, and there is no need for this court to enter a judgment.
 
 
 16
 Joint Appendix at 200a. Fort Gratiot then filed this appeal.
 
 II. ANALYSIS
 
 17
 (1) The district court erred in determining that the case was closed.
 
 
 18
 When an appellate court reverses a lower court's ruling, the proper procedure is for the appellate court (1) to remand for further proceedings consistent with its judgment and opinion, which constitutes a mandate after twenty-one days have elapsed, and (2) to return the record to the lower court promptly. That is what the Supreme Court did when it reversed this court's judgment.
 
 
 19
 It is not, unfortunately, what we did for the district court. We issued an order on August 7, 1992, but we failed to return the record in the case until June 8, 1993. Then, on November 8, 1993, we reissued our order "as mandate."
 
 
 20
 The result of these errors (ours and the district court's) is that there is not, even today, a viable judgment in the district court on Fort Gratiot's complaint. It is true, as appellees point out, that Fort Gratiot received from the Supreme Court the relief requested in its complaint: a decision that the Waste Import Restrictions violate the Commerce Clause by virtue of their ban on interstate waste. It is also true that appellate courts enjoy broad statutory powers. According to the United States Code:
 
 
 21
 The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
 
 
 22
 28 U.S.C. Sec. 2106 (1988). As the statute indicates, however, the appellate courts' powers necessarily operate in conjunction with the district court, where actual closure of cases occurs.
 
 
 23
 The court below understood this. At oral argument on Fort Gratiot's motions, the district court was "inclined to enter some sort of an order," one that would "simply track whatever language it is in the United States Supreme Court that prohibits the state from enforcing those provisions of the statute which discriminate against waste from out of state."
 
 
 24
 In its order ruling on Fort Gratiot's motions, however, the district court apparently found that our statutory power had enabled us to close the case entirely, and that we had done so. The court read our order as ending matters because "the Supreme Court had rendered a judgment in this action" and, thus, "there is no need for this court to enter a judgment."[7]
 
 
 25
 That is not so. We received the Supreme Court's mandate and, in turn, we (eventually) issued what we denoted as a "mandate" and returned the record to the district court. We should have provided better direction in that mandate, and we should have returned the record more promptly. Our shortcomings do not, however, excuse the district court from its duty to enter a judgment granting Fort Gratiot the relief it received from the Supreme Court.
 
 
 26
 The customary procedure on remand creates a duty on the part of lower courts, which obtain jurisdiction after receiving the mandate of an appellate court, to obey the terms of the mandate and to carry it into effect. 1B James W. Moore & Jo D. Lucas, Moore's Federal Practice p 0.404 (1993). The Supreme Court ordered this court to proceed further "in conformity with the opinion of this Court." Such a pronouncement incorporates the Court's opinion into the mandate. Jones v. Lewis, 957 F.2d 260, 262 (6th Cir.) (citing Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949-50 (3d Cir.1985)), cert. denied, 506 U.S. 841, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992). Lower courts must then determine the scope of an appellate mandate, and in so doing they may consider majority and dissenting opinions, as well as issues not decided expressly or impliedly by the Court. See id. (citing Cherokee Nation v. Oklahoma, 461 F.2d 674, 677 (10th Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972), and Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir.1985), cert. denied, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986)).
 
 
 27
 Thus, the district court, once it had this court's mandate and the record, had a reversed dismissal--and a live complaint--on its hands. At that point, it fell to the district court to do more than discuss what had happened before. The court had a duty to assess the law of the case and then handle the complaint accordingly, thus carrying the appellate mandates into effect. "[A] part of a judgment that has been reversed may not simply be reuttered without further proceedings." Moore & Lucas, supra, p 0.404.
 
 
 28
 An issue still to be resolved is Fort Gratiot's new request in the district court for an invalidation of the Amendments' regulation of intrastate, intercounty waste movement. Fort Gratiot's complaint attacked the Waste Import Restrictions solely because of their effects on out-of-state waste, but its reading of the Court's opinion as invalidating the Amendments entirely led it to propose an order to that effect to the district court.[8] The defendants, on the other hand, seek a holding that the Court's Fort Gratiot decision affects only the Amendments' ban on interstate transfers of waste, leaving Michigan's intrastate, intercounty waste regulations intact.[9]
 
 
 29
 The resolution of this question is for the district court, which has the task of implementing the Supreme Court's decision in the first instance. It is beyond dispute that the Supreme Court held the Amendments' regulation of interstate waste disposal invalid. The district court must now determine if the Fort Gratiot opinion operates to invalidate the Amendments entirely.
 
 
 30
 (2) The district court must reconsider whether Fort Gratiot may amend its complaint.
 
 
 31
 The district court prefaced its decision that this case was closed with a denial of Fort Gratiot's Rule 15(a) motion to amend its complaint with a claim for money damages under 42 U.S.C. Sec. 1983 and the Dennis decision. Because of this puzzling jurisdictional contradiction, we must reverse the district court on this point and remand for a reconsideration of whether Fort Gratiot should be allowed to amend its complaint.[10] The district court cannot effectively deny motions in a case on one hand, and then hold that it has no case before it on the other hand.
 
 
 32
 When deciding whether to allow Fort Gratiot to amend, the district court should recognize, inter alia, that the case is, to an extent, starting anew on remand. It should also consider its own lack of jurisdiction between March of 1990, when Fort Gratiot appealed from the district court's dismissal, and August of 1992, when this court issued its mandate. Moreover, it should weigh our late return of the record and our reissuance of the August 1992 order "as mandate" in November of 1993.[11]
 
 
 33
 It is settled law that filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal. See, e.g., Keohane v. Swarco, Inc., 320 F.2d 429, 432 (6th Cir.1963) (holding void orders entered by a district court after notice of appeal from interlocutory order), aff'd per curiam, 328 F.2d 615 (6th Cir.1964); see also 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure Sec. 3949 (1977 & Supp.1995) (explaining jurisdictional rules after a case is appealed). As a leading treatise states, "[o]nce an appeal has been taken from the judgment, the district court no longer has jurisdiction over the case and cannot reopen the judgment to allow an amendment to be made." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Sec. 1489 (1990) (footnote omitted).
 
 
 34
 The district court regained jurisdiction only when we issued the August 1992 order that operated as our mandate. 16 id. Sec. 3987 (Supp.1995). We clouded that threshold matter by delaying our return of the record, and by reissuing our order. We should hesitate to punish Fort Gratiot for what was, in large part, the courts' delay. Cf. Farkas v. Texas Instruments, 429 F.2d 849, 851 (1st Cir.1970) (holding that district court abused its discretion in denying leave to amend complaint where much of the delay was attributable to the district court's own delay in considering pending motions in the case), cert. denied, 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971).
 
 III. CONCLUSION
 
 35
 We REVERSE the district court's determination that our mandate on remand from the Supreme Court constituted a final judgment in this case. We thus REVERSE its denial of Fort Gratiot's motion for partial summary judgment. We also REVERSE the district court's denial of Fort Gratiot's motion for leave to amend. We REMAND this case to the district court for further proceedings in conformity with this opinion, with specific directions (1) to grant Fort Gratiot partial summary judgment to the extent the district court deems it appropriate in light of the Supreme Court's decision, and (2) to reconsider Fort Gratiot's motion to amend its complaint with a section 1983 claim for money damages.
 
 
 
 [1]
 The Commerce Clause gives Congress the power to regulate interstate commerce. When the clause is invoked to invalidate state regulations that improperly affect interstate commerce, it is sometimes called the "dormant" Commerce Clause. See Fort Gratiot, 504 U.S. at 359, 112 S.Ct. at 2023 (quoting H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 535, 69 S.Ct. 657, 663-64, 93 L.Ed. 865 (1949))
 
 
 [2]
 A corporate buyout during the pendency of the appeal necessitated the name change
 
 
 [3]
 Under Federal Rule of Civil Procedure 41(a), the mandate consists of "[a] certified copy of the judgment and a copy of the opinion of the court, if any, and any direction as to costs," unless we direct the issuance of a formal mandate. The order which this court issued on August 7, 1992, thus constituted this court's mandate after twenty-one days. Nevertheless, we specifically denoted the order a "mandate" when it was reissued in November of 1993
 
 
 [4]
 Kraft v. Jacka, 872 F.2d 862, 869 (9th Cir.1989); J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1476-77 (10th Cir.1985); Consolidated Freightways Corp. v. Kassel, 730 F.2d 1139, 1142-47 (8th Cir.), cert. denied, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984)
 
 
 [5]
 Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558, 562 (6th Cir.1982) (holding that the Anti-Injunction Act did not bar a section 1983 claim in a constitutional challenge of injunctions imposed under Michigan securities laws); see also Continental Ill. Corp. v. Lewis, 838 F.2d 457, 458 (11th Cir.1988), vacated on other grounds sub nom. Lewis v. Continental Bank Corp., 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990); Kennecott Corp. v. Smith, 637 F.2d 181, 186 n. 5 (3d Cir.1980)
 
 
 [6]
 Waste Sys. Corp. v. County of Martin, 985 F.2d 1381, 1389 (8th Cir.1993); BFI Medical Waste Sys. v. Whatcom County, 983 F.2d 911, 913-14 (9th Cir.1993); Mullis Tree Serv. v. Bibb County, 822 F.Supp. 738, 748 (M.D.Ga.1993)
 
 
 [7]
 Of course, this conclusion is entirely inconsistent with the district court's simultaneous ruling on Fort Gratiot's motion to amend its complaint
 
 
 [8]
 Fort Gratiot supports its argument with the cases cited supra at footnote 6
 
 
 [9]
 One Michigan case has already interpreted the Court's Fort Gratiot decision as striking down only the portions of the Act affecting interstate waste. Citizens for Logical Alternatives & Responsible Env't, Inc. v. Clare County Bd. of Comm'rs, 211 Mich.App. 494, 536 N.W.2d 286, 288 (1995) (per curiam)
 
 
 [10]
 While allowing such a complaint would raise issues of whether the defendants enjoy Eleventh Amendment or qualified immunity, we express no opinion on the precise availability of immunity in this case
 
 
 [11]
 At its hearing on Fort Gratiot's motion for partial summary judgment, the district court recognized the difficulty this procedural posture created for Fort Gratiot. "[I]f I have dismissed a--a complaint and then I get a motion to amend it, you know, I'm going to give that pretty short shrift."